FREDERICK B. SNYDER and VIRGINIA, his Wife, *vs.*
JOSHUA JONES.

*Equity Jurisdiction— Voluntary Contract without consideration,
void—Power of a Court of Equity to inquire into the Real
consideration of a Contract—Contract void in consequence of the
Relations existing between the parties thereto. .*

Mrs. Jones, the wife of the appellee, and mother of the appellant V., was
entitled during her life, to the income of a legacy of $7000, the principal to
be distributed after her death among her children. Mrs. Jones first married
a brother of the appellee, by whom she had five children, of whom the
appellant V., was one, and all of whom, except William, survived her. In
1845, she married the appellee, by whom she had two children, both of whom
survived their mother, who died in 1869. At the time of the marriage
between Mrs. Jones and the appellee,· all her children were minors, except
one; the appellant V., the youngest, was then fourteen years of age. Mrs.
Jones owed some debts, contracted during her widowhood, which the in-
come from her legacy was insufficient to pay, and they were paid by the
appellee; and he thenceforth insisted that her children by the first marriage
were morally and justly bound to repay him the money he had thus ex-
pended. After the children reached their majority, he obtained from them
written due-bills or obligations, for what he estimated to be their several
portions thereof, payable out of the legacy, after the death of their mother.
The due-bill of the appellant, V., dated the 20th October, 1852, was an
acknowledgment under seal, that there was due by her to the appellee or
order $214.34, to be paid out of her reversionary interest in said legacy,
after the death of her mother, for value received, with interest from date.
The money constituting the legacy being in the hands of a trustee, ap-
pointed under a decree of the Court of Chancery, who was about to dis-
tribute the same among the children of Mrs. Jones, the parties entitled
thereto in remainder, the appellee filed his petition, praying that the trustee
might be required to pay out of the distributive share due the appellants,
the amount of the due-bill of the appellant V. with interest thereon, or that
he might be required to retain the same. HELD :

1st. That the claim of the appellee being payable out of a particular fund '
over which the Court of Equity had jurisdiction, the Court had the power

to order it to be paid out of the fund in the hands of the trustee; provided it was established by proof, and was a valid and equitable claim.

2nd. That the due-bill or obligation of the appellant V. was a merely voluntary contract, without consideration, which a Court of Equity would not enforce; it having been given to reimburse the appellee for money expended by him in paying certain debts due by his wife, contracted while she was a widow, which devolved upon him as her husband, and which her children were in no manner bound to pay, either in law or morals.

3rd. That the fact that the due-bill was under seal, and purported on its face to be "for value received," could not prevent a Court of Equity from inquiring into the real consideration for which it was given, and being found to be a merely voluntary contract without good consideration, refusing to enforce it.

At the time the due-bill was executed, and for seven years before, the appellant V., lived in the house of the appellee, a member of his family, and stood towards him in the relation of a daughter; she had reached her majority only a few months before, and at the time she executed the paper, she had not been emancipated from his government and authority. Soon after the marriage of the appellee, upon discovering his wife's indebtedness, he made it the cause of discord in the family, treated her harshly on that account, and after he had paid the debt, demanded of her children, security for its repayment; stated to them that they ought to pay it back, that he had talked with his lawyers, and was acting on their advice, and said it was right and proper, that they (the children,) should sign the paper, in order to reimburse him for the payment of their mother's debts. It appeared from the testimony, that the only motive of the appellant V. in signing the paper, was to gratify her father's importunate demands, in the hope of thereby securing peace in the family, and kinder treatment to her mother. She had no advice or assistance, and was not informed of her rights and obligations. HELD:

That it would be inequitable to enforce her contract, entered into under such circumstances, in favor of the appellee, who held towards her the relation of confidence and authority.

APPEAL from the Circuit Court of Baltimore City.

The facts of the case are sufficiently stated in the opinion of the Court, as also the purport of the petition of the appellee, and the nature of the decree from which this appeal was taken. The appellants in their answer

to the petition of the appellee, resisted his claim, requiring full proof of the alleged indebtedness of his wife at the time of their marriage. The respondents denied that after the appropriation of the proceeds of the legacy of $7000, and all other moneys of Mrs. Jones, the wife of the appellee, there remained any such balance as that stated in the petition. The answer further stated that the respondent, Virginia, after the marriage of her mother to the petitioner, resided in the house with him until the date of her marriage with her co-respondent; that soon after the marriage of the petitioner, he showed signs of disappointment, and many months had not elapsed before he commenced treating his wife and all her children with harshness and disrespect, because, as he alleged, he had been called upon to pay an indebtedness for his wife, of the existence of which he professed to have been uninformed; that he from time to time represented to the respondent, Virginia, and her brothers and sisters, that they were in law chargeable with the debts of their mother, and that it would be in his power to take legal measures at once, in the lifetime of their mother, by means whereof their interest in the legacy could be subjected to sale for the purpose of returning to him the money which he professed to have paid on account of the debts of their mother, and he even informed them that he had taken competent legal advice which justified him in such pretensions; that at the time the respondent, Virginia, executed the due-bill in favor of the petitioner, she resided in the house with him, and had done so and been under his parental control and authority from the time of his intermarriage with her mother; that she was born on the 16th of April, 1831, and at the time of the execution of the due-bill, was only a little more than twenty-one years of age, and that from his sternness and harshness, and his cruel treatment of her mother, she was under great dread of the petitioner; that she was

totally unexperienced in any business, and unacquainted with her legal rights, and that she was informed by the petitioner, and believed, that in executing the said paper she was merely doing that which he could compel by legal measures, and she consulted no legal or other adviser, and acted only under the direction of the petitioner ; that the petitioner said to her, that if she would execute the paper, it would promote peace in the family, and that he would appropriate the interest arising from the legacy of her mother to the payment of said notes, and destroy the same when paid. The answer further alleged, that the petitioner informed the respondent, Virginia, that the children of the first marriage were responsible for their mother's debts, and that as William E. Jones, one of said children, had died before October, 1852, the remaining four children of that marriage were compelled by law to divide equally among them, and pay the amount of between eight and nine hundred dollars, which he claimed to have paid, and she was compelled to assume the fourth part of the said indebtedness, without reference to the obligation of her deceased brother, William ; that not until the marriage of the respondent, Virginia, did she learn to what an extent she had been imposed upon in yielding to the importunities and coercion of her step-father ; and the respondents charged, that even if the petitioner did pay any debts of the mother of the respondent, Virginia, no obligation whatever was imposed upon her, and that the due-bill was entirely unsupported by any consideration, and that by reason of the relations which existed between her and her step-father, and the absence of any opportunity for competent advice on her part, and by reason of the false and fraudulent representation of his rights made by said petitioner, and on which she relied, and of the coercion exercised towards her in the cruel treatment of her mother and of herself, the said due-bill was wholly void,

even if the petitioner had not received, which the respon-' dents affirmed that he had, between the date of his alleged payments and the filing of his petition, from the income and property of the said Ann, an amount more than equal to the principal and interest of any money which he might have paid for any debts of hers, existing at the time of their marriage; and for all which they prayed the petitioner might account. The respondents also pleaded the Statute of Limitations to the claim of the petitioner.

Testimony was taken, and after hearing the solicitors for the respective parties, the Court, (PINKNEY, J.,) passed the decree from which this appeal was taken.

The cause was argued before BARTOL, C. J., STEWART, GRASON and ALVEY, J.

*James L. McLane* and *William A. Fisher*, for the appellants.

A Court of Equity will not aid the appellee to recover such a claim. His remedy, if any he have, must be at law; the instrument is not an assignment, but a *covenant* of Miss Virginia Jones, to pay out of a particular fund.

The appellee and his niece and step-daughter were not on equal terms, and he could make no contract with her. The Courts will not allow any one who occupies any relation toward another, which involves confidence or authority, to take a benefit at the expense of the other, without the clearest evidence that such donor or promisor was in a position fully to comprehend her rights, and was wholly disembarrassed of such influence and authority. This rule is not restricted to any particular class of relations, and is justly nowhere more strictly applied than in the case of parent and child, guardian and ward, and equally applicable to a person standing in *loco parentis*. *Highberger vs. Stiffler*, 21 *Md.*, 338; *Todd vs. Grove*, 33 *Md.*, 192–94; *Hatch vs. Hatch*, 9 *Vesey, Jr.*, 292; 1 *Story's*

*Equity*, secs. 309, 317, 318, 319; *Archer vs. Hudson*, 7 *Beavan*, 551; *Maitland vs. Irving*, 15 *Simons*, 437; *Revett vs. Harvey*, 1 *Sim. & St.*, 502; *Taylor vs. Taylor*, 8 *Howard*, 183; *Everett vs. Everett*, 10 *L. R. Eq. Cases*, 405; *Haygarth vs. Wearing*, 12 *L. R. Eq. Cases*, 327; *Hoghton vs. Hoghton*, 15 *Beavan*, 299–300; *Baker vs. Bradley*, 7 *De Gex, M. & G.*, 621.

No distinction can be drawn in principle, and none is attempted in the cases between what purports to be bounty, and what purports to be contract between such parties. Contracts should be treated with greater strictness, as it is evident that the weaker party did not act from motives of kindness only, and the presumption of imposition is increased, if the contract is one unfavorable to her. Nor is the case aided by the fact that the appellee sought to place the contract in such form that he could contend, that a consideration was imported from its form.

*Jno. T. Mason* and *Wm. M. Merrick*, for the appellee.

The transaction was by no means a gift, but the performance of a moral and legal duty. Dr. Jones being under no obligation whatever to support his stepdaughter, a promise made by her, after coming of age, to pay for such support, is not *nudum pactum*, but valid and binding, and sufficient foundation for an *action at law* even. 1 *Bl. Com.*, (*Sharswood*,) 450, (*note*) 3; *Cooper vs. Martin*, 4 *East*, 82; *Tubb vs. Harrison*, 4 *T. R.*, 118; *Freto vs. Brown*, 4 *Mass.*, 675, 676; *Williams vs. Hutchinson*, 3 *Comst.*, 312, 318, 319; *Minden vs. Cox*, 7 *Cowen*, 237.

And if there be a good consideration for the assignment, it is indispensable to prove actual fraud in order to set it aside; and of this there is no evidence whatever.

If the obligation be purely a gift, still there is no evidence of that undue influence or want of competent and

independent advice which, on grounds of public policy, render such a transaction void. The doctrine of competent and independent advice, recently promulgated in England, has never been adopted in this State or country.

In the case of *Todd vs. Grove*, 33 *Md.*, 193, the Court commented upon this doctrine, and cited the case of *Rhodes vs. Bates*, 1 *Ch. Appeal Cases*, 256, (which qualifies the general principle,) but expressed its disapproval of the doctrine as operating too great a restraint upon the disposition of property. The extent of the decision in *Todd vs. Grove*, is, that gifts obtained where a confidential relation exists are *prima facie* void, and the burden is upon the donee to establish that it was the free, voluntary, unbiased act of the donor.

There must be *confidence reposed* on the one side, and *influence acquired* and *improperly exercised* on the other, to bring a case within the general rule. *Brook vs. Berry,* 2 *Gill,* 96, 98 ; *Highberger vs. Stiffler,* 21 *Md.*, 352, 353 ; *Todd vs. Grove,* 33 *Md.*, 195, &c.; *Taylor vs. Taylor,* 8 *Howard,* 200, 201 ; *Jenkins vs. Pye,* 12 *Peters,* 253, 254 ; *Story's Eq. Juris.*, secs. 308, 309 ; *Huguenin vs. Baseley,* 2 *Lead. Cases in Equity.*

The present case comes fairly within the qualification in *Rhodes vs. Bates ;* but in point of fact there is no evidence in this case of that unequal position of the parties which is the very foundation of this doctrine. The evidence shows throughout that Dr. Jones and his niece stood upon even ground and dealt at arms-length ; there was none of that " overweening confidence" and " commanding influence" which is an ingredient in all the cases which have arisen. Mrs. Snyder says herself, that she was *not taught* to look to her uncle for advice, and that he *did not exercise paternal* authority in the family ; that she knew perfectly well the nature of the transaction ; that she consulted about it with her brother

and sisters— and "was not that childish that I did not know what I was signing."

The appellant, Mrs. Snyder, has slept upon her alleged rights for more than *twenty years;* although removed from the reach and influence of her step-father within two years after she executed the paper, and having learned at that time of the alleged imposition, the staleness of the matter therefore forms an insuperable barrier to any relief in equity. Courts of Equity will not look into transactions of such long standing. *Clabaugh vs. Byerly,* 7 *Gill,* 364 ; *Nelson vs. Hagerstown Bank,* 27 *Md.,* 74 ; *Syester vs. Brewer,* 27 *Md.,* 319 ; *Jenkins vs. Pye,* 12 *Peters,* 254, 261, 262, *and cases there cited.*

BARTOL, C. J., delivered the opinion of the Court.

"Ann Jones, the wife of the appellee, and mother of the appellant, Virginia, was entitled to the income during her life of a legacy of $7000.00 under the will of Larkin Shipley, and the principal was to be distributed after her death, among her children. Mrs. Jones first married a brother of the appellee, by whom she had five children, of whom Virginia Snyder was one, and all of whom survived her, except William."

"In July, 1845, she married the appellee by whom she had two children, both of whom survived their mother, who died in 1869. At the time of the marriage between Mrs. Jones and the appellee, all her children were minors except Milton ; Virginia, the youngest, was then fourteen years of age." Mrs. Jones owed some debts, contracted during her widowhood, which the income from her legacy, then in litigation, proved insufficient to pay, and they were paid by the appellee ; and he thenceforth insisted that her children by the first marriage were morally and justly bound to repay him the money he had thus expended. He accordingly adopted such measures as he thought expedient to secure it ; and after the children

reached their majority, he obtained from them written due-bills, or obligations for what he estimated to be their several portions thereof, payable out of the legacy, after the death of their mother.

. The due-bill of Virginiâ, the appellant, for the collection of which this proceeding was instituted, is as follows:

"(Stamp 15 cts.)          October 20th, 1852.

"$214.34  "Due Joshua Jones or order, two hundred and fourteen dollars and thirty-four cents, to be paid out of my reversionary interest out of Ann Jones' trust fund, in the name of Wayman & Stockett, trustees, after the said Ann Jones' death ; for value received, with interest from date.

"Witness my hand and seal.

                    "VIRGINIA JONES, [*Seal.*]"

. The money constituting the legacy aforesaid, being in the hands of a trustee, appointed under a decree of the Court of Chancery, who was about to distribute the same among the children of Ann Jones, deceased, the parties entitled thereto in remainder ; the appellee filed his petition, praying that the trustee may be required to pay out of the distributive share due the appellants, the amount of Virginia's due-bill, with interest thereon ; or that he may be required to retain the same.

The Circuit Court decreed in favor of the appellee, directing the trustee to pay out of the distributive share of Virginia, the sum of $214.34, with interest thereon from the 20th day of October, 1852 ; and from that decree this appeal has been taken.

The question of jurisdiction has been raised by the appellants' counsel, who have argued that the only remedy of the appellee is by a suit at law ; "the instrument not being an assignment, but merely a covenant to pay out of a particular fund." We agree that such is

the proper construction and effect of the instrument; it does not operate as an assignment; but being charged upon, or payable out of a particular fund over which the Court of Equity has jurisdiction, there can be no question of the power of that Court to entertain the claim of the appellee, and order it to be paid, out of the fund in the hands of the trustee; provided it be established by proof, and be a *valid* and *equitable* claim.

It is a contract to pay money, and in order to entitle the appellee to enforce it, it must appear to have been made upon a good and sufficient consideration.

We have stated that it was given to reimburse the appellee for money expended by him in paying certain debts due by his wife, contracted while she was a widow. The consideration is so stated by the appellee in his petition, wherein it is averred "that the whole amount of such debts, at the time of the marriage was $3835.58, and after the appropriation of the proceeds of the legacy, and of all other moneys belonging to Mrs. Jones from other sources, amounting to $2968.21, the balance due by her amounted to $867.37, which said balance was paid by your petitioner out of his individual funds."

There being four children of Mrs. Jones by her first marriage, the appellee, considered himself entitled to exact repayment of *one-fourth* from each of them, and this constitutes the only consideration for the obligation now in question. It is obvious from the appellee's own statement, that there was no valid consideration whatever to support the contract. The money paid by the appellee was paid in satisfaction of his own debts; being due by his wife before marriage they devolved upon him, and her children were in no manner bound to pay them, either in law or in morals. It thus appears that the instrument of writing signed by the appellant, Virginia, is a mere voluntary contract without consideration, which a Court of Equity will not enforce, even if it was free from objection on other accounts.

The payment of Mrs. Jones' debts by the appellee after their marriage, could not make *her* his debtor; but if any such debt existed, it would not be a good consideration to support a promise by the appellant, Virginia, to pay it. It was decided in *Wyman vs. Gray*, 7 *H. & J.*, 409, that a promissory note given by one person, for a debt due by another, without any consideration moving to the party promising, is *nudum pactum;* and an action will not lie thereon as between the original parties to the note. In this case the instrument of writing is under seal, and purports on its face to be "for value received;" but a Court of Equity cannot be prevented by the form of the instrument, from inquiring into the real consideration for which it was given; and if it be made without good consideration and be merely voluntary, it will not be enforced. We have said the writing of the 20th of October is not an assignment, but a covenant to pay money out of a particular fund; not an executed gift, but an executory contract merely, which the appellee now seeks to enforce. In such case, the Court acts upon the same principle as governs it in a proceeding for specific performance; and the general rule is correctly stated by Judge STORY to be now established "that the Court will not execute a voluntary contract, but will withhold assistance from a volunteer, whether he seeks to have the benefit of a contract, or a covenant, or a settlement." 1 *Story Eq. J., sec.* 793*d.*

In *Pulvertoft vs. Pulvertoft*, 18 *Ves.*, 84, Ld. ELDON said: "The distinction is settled that in the case of a contract merely voluntary, (I do not speak of a valuable or meritorious consideration,) this Court will do nothing. But if it does not rest in a voluntary agreement, but an actual trust is created the Court does take jurisdiction."

It was said by L. Ch. NOTTINGHAM, in *Jefferys vs. Jefferys*, 1 *Craig & Phil.*, 138, 141: "The principle of the

Court is to withhold its assistance from a volunteer, whether he seeks to have the benefit of a contract, a covenant, or a settlement." In that case a father having made a voluntary covenant to surrender certain copyhold estates to trustees, for the benefit of his daughters, the Court after his death refused to enforce the covenant in favor of the daughters.

The same principle was recognized by Sir L. SHADWELL, V. C., in *Holloway vs. Headington*, 8 *Simons*, 324. There can be no doubt of the application of this principle to the present case.

An attempt has been made to show that there was a good and valuable consideration to support the contract.

It is alleged in the petition that the appellee after his marriage, furnished board and maintenance to the appellant, Virginia, until her marriage in 1854 ; and it is said he was under no obligation to do so, she being his stepdaughter only ; as was decided in *Tubb vs. Harrison*, 4 *Term.*, 118, and *Cooper vs. Martin*, 4 *East*, 76 ; and it is argued that "a promise made by her after coming of age, to pay for such support, is not *nudum pactum*, but valid and binding." But it is impossible for the appellee to maintain the claim set up in his petition on this ground. It is not alleged or pretended that the board and maintenance of the appellant, (Virginia,) after her mother's marriage to the appellee, formed any part of the consideration for which her obligation of the 20th of October, 1852, was given. On the contrary, the only consideration for the same was that before stated, no other is alleged in the petition or shown by the proof; and as we have seen it is not sufficient to bind the appellants so as to entitle the appellee to enforce the same in a Court of Equity.

But the objection to the appellee's claim in this case does not rest merely on the want of consideration to support it; there are other objections growing out of the relation existing between the parties, and the facts and

circumstances attending the transaction, as disclosed by the evidence, which deprive the appellee of any right to relief. At the time the writing of October 20th, 1852, was executed, and for seven years before, the appellant, Virginia, lived in the house of the appellee, a member of his family, and stood towards him in the relation of a daughter; she had reached majority only a few months before, and at the time she executed the paper, she had not been emancipated from his government and authority. She was not married until two years afterward. It appears from the evidence that soon after his marriage, when the appellee discovered his wife's indebtedness, he made it the cause of .discord in the family, treated her harshly on that account, and after he had paid the debt, he demanded of her children security for its repayment; stated to them that they ought to pay it back, that he had "*talked with his lawyers and was acting on their advice, and said that it was right and proper and honest and just that they* (the children) *should* sign the paper, in order to reimburse him for the payment of their mother's debts." It appears from the testimony that the only motive of Virginia in signing the paper, was to gratify her father's importunate demands, in the hope of thereby securing peace in the family, and kinder treatment to her mother. She had no advice or assistance, and was not informed of her rights and obligations.

It seems to us that it would be inequitable to uphold and enforce her contract, entered into under such circumstances, in favor of the appellee, who held toward her the relation of confidence and authority.

The principles which govern Courts of Equity in dealing with transactions of this kind, have been laid down by the Supreme Court in *Taylor vs. Taylor*, 8 *How.*, 183; and by this Court in *Brooke vs. Berry*, 2 *Gill*, 83; *Highberger vs. Stiffler*, 21 *Md.*, 338, and *Todd vs. Grove*, 33 *Md.*, 188. These need not be repeated here. If applied

to the present case, they present an insuperable objection to the enforcement of the contract of the appellant, which the evidence shows was obtained by the undue influence of parental authority ; and was made without any valid or sufficient consideration. For these reasons the decree of the Circuit Court will be reversed, the petition of the appellee dismissed, and the cause remanded.

> *Decree reversed, petition dismissed,*
> *and cause remanded.*

(Decided 10th July, 1873.)