## MARGARET W. SCHAPIRO et al. *vs.* ELIZABETH W. HOWARD et al.

*Construction of Wills—Gift to Children of Testator's Wife—*
*Alternative Contingent Remainders After Life Estate—*
*Time of Vesting—Conveyance of Contingent Re-*
*mainder Made Before Vesting.*

In the construction of a will, the Court seeks to ascertain and
carry out the intention of the testator, but that intention is
the one expressed in the will, and the question is not what the
testator meant, but simply what is the meaning of the words
he used.   Therefore, extrinsic evidence is not admissible to
show that he meant something different from what his lan-
guage imports, nor can the Court reconstruct his will to effect
what it may suppose to have been his intention.

When a testator devises property, after a life estate therein
given to his wife, to her children, this includes children she
may have by a subsequent marriage, as well as her children
by him.

When remainders after a life estate are given to the children
of the life tenant, and if she (the life tenant) die without
issue living, then to the heirs at law of the testator, the limi-
tations create alternative contingent remainders, or remain-
ders with a double aspect.

In such case, upon the death of the life tenant without issue, the
remainders vest in those persons who at that time are the
heirs at law of the testator, and not in those who answered
that description at the time of his death.

A testator gave the residue of his estate to his wife, to be held
by her during her life, she to have sole control of said estate,
"and in the event of my said wife having any child or chil-
dren at the time of her death, I will and devise the whole of
said estate to said child, or children equally if more than
one.   But in the event of my said wife dying without issue

living then and in that case I devise and bequeath all said estate to my heirs at law." The testator's widow remarried and died without leaving issue by either marriage. The estate in remainder was claimed by those who were the heirs of the testator at the time of his death, and by those who were such heirs at the time of the death of the life tenant. *Held,* that the gift in remainder to the children of the testator's wife was not restricted to her children by him, but, according to the plain language of the will, was given to any children she might have.

*Held,* further, that consequently the remainder to the heirs of the testator, being contingent upon the failure of issue by the life tenant, did not vest in those heirs at the testator's death, but, at the death of the life tenant, vested in the persons who were then the heirs of the testator.

When a contingent remainder is limited by will not to a designated individual, but to a class of persons, and one person of that class executes a voluntary deed of trust conveying all his property, the remainder will not pass under the conveyance when it subsequently becomes vested upon the happening of the contingency.

But if a grantor, for a substantial and valuable consideration, conveys property that he may thereafter acquire under a contingent remainder, equity may, in a proper case, enforce the conveyance when the remainder becomes vested.

*Decided June 23rd, 1910.*

Appeal from the Circuit Court for Anne Arundel County (BRASHEARS, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS and URNER, JJ.

*D. K. Este Fisher,* for Margaret W. Schapiro, appellant.

*Charles McH. Howard,* for the Safe Deposit and Trust Co., Trustee, appellant.

*John B. Deming* (with whom were *Whitelock & Kemp* on the brief), for the appellee.

PEARCE, J., delivered the opinion of the Court.

The two appeals embraced in this record are from a decree of the Circuit Court for Anne Arundel County in Equity, construing the will of John J. Hopkins, deceased, who was a resident of that county at the time of his death.

The questions presented arise upon a petition filed in a case in said Court, of *Mary M. Harding* v. *Elizabeth W. Howard et al.,* by the Safe Deposit and Trust Company of Baltimore as trustee under the will of said John J. Hopkins, and also as trustee under the will of Lavinia Hopkins, and as trustee under two deeds, one from Margaret W. Schapiro, and one from Samuel H. Mercer. By the decree passed March 10th, 1896, in the original cause above mentioned, the Safe Deposit and Trust Company of Baltimore was appointed trustee to receive from Lewis N. Hopkins, executor of said John J. Hopkins an invested fund of about $9,000 to hold the same for the use of Elizabeth W. Howard, the widow of John J. Hopkins, for her life, and for distribution after her death to those held to be entitled under his will, and since the passage of said decree the said trust has been administered in that Court.

The will of John J. Hopkins is as follows being transcribed in full:

"The last will and testament of me, John J. Hopkins, of Anne Arundel County, in the State of Maryland:

First: I will and direct that all my just debts be paid and satisfied by my executor hereinafter named after my decease.

Second: I will and bequeath unto Louis Hopkins, of Baltimore City, the sum of three thousand dollars, to be invested by him in such stocks or securities as in his discretion shall be most profitable, in trust, for the use and benefit of my wife's sister, Mrs. Margaret E. Warfield, wife of Lot Warfield. The issues and profits thereof to be paid to the said Margaret E. Warfield during her natural life, and after her death to be

applied to the use and benefit of her children now living, John B. Warfield and Clarence Warfield, and any other children she may have born to her in wedlock, and upon the arrival at age of each of said children above named, I will and bequeath their share, respectively, of the sum of three thousand dollars, to be paid to them by my said trustee, with the right of survivorship in the event of either of them dying during their minority. And in the event of each and all of the children of said Margaret E. Warfield dying before their arrival at age, I bequeath the said sum to my heirs at law.

Third: I will and bequeath to my nephew, John B. Warfield, my watch and chain that I now wear.

Fourth: I will and direct that my executor hereinafter named, as soon after my decease as to him may seem practicable, sell all my real estate lying near Millersville, in Anne Arundel County, being the farm whereon I now reside, as also all other estate on said farm, and invest the proceeds thereof in such securities as to him may seem most judicious, in the name of my wife, Elizabeth W. Hopkins, to be held by her, my said wife, Elizabeth, during her natural life, without impeachment of waste, or let or hindrance, from any person whomsoever, during her natural life, with power to sell and reinvest the same as she may think advisable. And I further will and devise unto the said Elizabeth W. Hopkins all other estate, real, personal and mixed, that I may die possessed of or entitled to by devise or inheritance, or in any manner whatever the same may be obtained, to be held by her, my said wife, Elizabeth W. Hopkins, during her natural life, she to have sole control of my said estate without let or hindrance from any person or persons whomsoever; and in the event of my said wife having any child or children at the time of her death, I will and devise the whole of said estate to said child or children, equally to be divided if more than one. But in the event of my said wife dying without issue living, then and in that case I devise and bequeath all said estate to my heirs at law.

Lastly: I do hereby appoint the aforesaid Louis Hopkins, of Baltimore City, sole executor of this my last will and testament, revoking and annulling all other wills by me made, and

ratifying and confirming this and none other to be my last will
and testament.

Witness my hand and seal this 14th day of June, in the year
eighteen hundred and seventy-three.

                                  JOHN J. HOPKINS.  (Seal)

Signed, sealed, published, pronounced and declared by John
J. Hopkins, the within-named testator, as and for his last will
and testament in the presence of us, the subscribers, who, at his
request and in his presence, and in the presence of each other,
have hereunto subscribed our names as witnesses thereto.

Witnesses:

      A. S. BRYAN,

      E. C. GANTT,

      C. McCENEY CLAYTON."


Elizabeth W. Hopkins, after the death of her husband,
remarried, and died, Elizabeth W. Howard, October 14th,
1909, without having had issue by either marriage, and the
estate of John J. Hopkins, being the fund above mentioned,
is now to be distributed to the parties entitled under his will.
His heirs at law, answering to that description at the time
of his death, were his brother, Mahlon Hopkins, and his sis-
ter Ella W. Mercer.  Mahlon Hopkins died without issue in
1879 leaving a will by which he devised and bequeathed all
his estate to his mother, Lavinia Hopkins, who died in 1884
leaving a will by which she devised and bequeathed the re-
sidue of her estate to the Safe Deposit and Trust Company
upon certain trusts declared in said will.  This will was con-
strued by this Court in *Marshall* v. *Safe Deposit and Trust
Co.*, 101 Md. 1, where it was held that one twelfth part of
said residue vested in Marie Henriette Mercer, widow of
Samuel H. Mercer; five twenty-fourths in Charles H. Hard-
ing, executor and residuary legatee of Mary M. Harding,
and the remaining seventeen twenty-fourths in the Safe
Deposit and Trust Company under a deed of trust made to
it from Margaret W. Schapiro.

Ella W. Mercer died in 1879 leaving a will by which she did not attempt to dispose of any interest she might be supposed to have under the will of John J. Hopkins, and leaving two sons, Samuel H. Mercer and George D. Mercer, and two daughters, Mary, wife of Charles H. Harding, and Margaret, now the widow of Salo Schapiro, all of whom except Margaret Schapiro died before Elizabeth W. Howard.

George D. Mercer died without issue in 1887 leaving a will by which he devised and bequeathed all his property to his wife Jennie W. Mercer, now Jennie Mercer Lake. Samuel H. Mercer died in 1897 leaving a will by which he devised and bequeathed all his property to his wife Marie Henriette Mercer. Before his death however he had executed a deed of trust to Lewis N. Hopkins, and on the death of Lewis N. Hopkins the Safe Deposit and Trust Company was duly appointed trustee in his place. Margaret Schapiro and her husband in 1899 made a deed of trust to the Safe Deposit and Trust Company of all her property and estate in Maryland "whether in possession, reversion or expectancy * * * including all of her right, title, interest and estate, both at law and in equity in and to that portion of the estate of John J. Hopkins, deceased, which under his will or otherwise, is now or may hereafter be vested in the said Margaret Schapiro as one of the heirs at law of said testator."

If the date of Mrs. Howard's death without issue is the date at which the heirs entitled to this estate are to be ascertained, then Mrs. Schapiro is the only person answering that description, and is solely entitled.

If however the date to be taken for that purpose is the death of John J. Hopkins, then Mahlon Hopkins and Ella W. Mercer were the only persons answering that description, if the words "heirs at law" are to be construed in their ordinary sense, or if they are to be construed as "next of kin," in consequence of the admitted conversion of the property into personalty under the will, then Mahlon Hopkins, Ella W. Mercer and Lavinia Hopkins, were the three persons

answering that description; the shares so vesting, in either aspect of the case, passing to the beneficiaries of the heirs at law, or next of kin, under the various wills, deeds and devolutions of title before mentioned.

All persons possibly interested in the estate upon any theory were made parties, and have answered admitting the necessity of a construction of the will and the case was heard upon the petition and answers, and an agreed statement admitting all matters and facts alleged in the petition and not denied in the answers, without however admitting any statement as to the construction or legal effect of any instrument referred to.

The Court below was of opinion that the words "heirs at law" must be construed as next of kin, but no one prejudiced by the decision upon that point has appealed, and both the appellants agree that the question is not material.

The Court below held that the estate vested immediately upon the death of John J. Hopkins, in equal shares in his mother Lavinia Hopkins and his brother and sister Mahlon Hopkins and Ella W. Mercer, as his next of kin, and that "by virtue of the operation of the deaths, wills, deeds and other facts and instruments recited in the proceedings, said shares in remainder should be distributed as follows:

"To the Safe Deposit and Trust Company as trustee under the deed from Mrs. Schapiro 20/36; to Charles H. Harding 8/36.; to Jennie Mercer Lake 3/36; to Marie Henriette Mercer 2/36; and to the Safe Deposit and Trust Company under the deed from Samuel H. Mercer 3/36."

These appeals thus present two questions:

(1) Did the remainder after death of Elizabeth W. Howard vest at the death of John J. Hopkins in those persons who then composed the class of heirs at law of the testator meaning in this case in the view of the Court, his next of kin, or did it vest at the death of Elizabeth W. Howard, in Mrs. Schapiro as the only living representative of that class.

(2) If this remainder vested in Mrs. Schapiro, at Mrs.
Howard's death, then was her deed of trust to the Safe
Deposit and Trust Company effective to vest the estate in
the trustee.

Upon the first of these questions, the learned Judge of
the Circuit Court reached his conclusion by adopting the
view that notwithstanding the testator had *said* in unam-
biguous and unmistakeable language, that his estate, upon
the death of his wife, should go to *any child or children of
hers,* that his *intention* was that it should *only go to her chil-
dren by him,* and that this language, however contradictory
of his *apparent* intention *must* be so construed as to give ef-
fect to his *presumed* intention. His actual language was, "I
will and devise unto the said Elizabeth W. Hopkins all estate
that I may die possessed of * * * to be held by her, my said
wife, Elizabeth W. Hopkins, during her natural life, she to
have sole control of my said estate without let or hindrance
from any person whatever; and in the event of my said wife
having *any* child or children at the time of her death, I will
and devise the whole of my said estate to said child or chil-
dren, equally to be divided, if more than one. But in the event
of my said wife dying without issue living, then and in that
case, I devise and bequeath all said estate to *my* heirs at
law." In support of this finding of the testator's intention,
the Court in its opinion cites no authority, nor is any cited
by the able and diligent counsel of the appellees in their
brief in this Court.

If this intention can be properly deduced from the lan-
guage of the will, it is unquestionably decisive upon the
point now under consideration, since if he intended to desig-
nate only children begotten by him, the possibility of *such*
children terminated at *his* death. He died without issue,
and there was then no class or individual answering the de-
scription of children, or a child, begotten by him, and *there-
fore* the remainder would *then* vest in his heirs at law as
held by the Court. But is this view tenable?

We will reproduce here the language of the opinion below upon this point.

The Court says: "This will was executed June 14th, 1873, and the testator died in 1875. He had no children at the time the will was executed, and none at the time of his death; but he left surviving him a mother and a brother and a sister.

"If the words of this clause, now the subject of this controversy, be taken literally the result would be that had a child of the tenant for life by the testator, and a child or children of her by a future husband survived, they would have shared equally in this estate. In other words, strangers to his own blood would have taken what in all reason or justice should go to his own child; and besides, on the failure of a child by him, and the birth of a child by a future husband, strangers to him would have taken in preference to his next of kin or heirs at law.

"The natural objects of his bounty were: first, his wife and children, if any should be born after the execution of his will; and second, his mother and his brother and sister. There is nothing in the will to indicate an unfriendly feeling toward his next of kin. On the contrary he made provision for them without preference. If there had been an intention on his part to provide for children of his wife by a future husband, and divest the property altogether from his next of kin, it is strange he did not create the ultimate bequest in favor of the heirs at law of his wife."

Let us see how this method of dealing with the unambiguous language of a will comports with the decisions in this State.

In *Walston* v. *White,* 5 Md. 297, JUDGE LEGRAND said: "The rule is this: where the language of the testator is plain and unambiguous such language must govern, and therefore extrinsic evidence is inadmissible to show that he *meant* something different from what his language imports; in other words, the question in expounding a will is not what the

testator *meant,* as distinguished from what his words express, but simply what is the meaning of his words." That was an action of ejectment, where title depended upon the location of Beaver Dam Branch designated by the testator in his will, as a boundary between two tracts, and the only exception in the case was to the ruling on the prayers. One of the plaintiff's prayers left it to the jury to find the location of the stream mentioned, together with other designated facts necessary to recovery. It was objected that this prayer should have left to the jury the *intention* of the testator in the use of the words "Beaver Dam Branch," and the trial Court sustained the objection and rejected the prayer, but this Court held that ruling to be erroneous.

When a Court is expounding a will either at law, where it is sitting as a jury or in a proceeding like that before us, we know of no other rule by which it must be governed than that indicated above, nor any authority for allowing greater latitude in the application of that rule, in the one case than in the other.

In *Hawman* v. *Thomas,* 44 Md. 30, JUDGE BARTOL quoting CHIEF JUSTICE SHAW, said: "The general rule certainly is, the intention of the testator is to govern, in the construction, but it is the intention expressed in the will." In *Heald* v. *Heald,* 56 Md. 313, JUDGE ROBINSON said: "Whatever may be the general intent of the testator, if it does not appear that he has omitted words intended to be used, it is not competent for the Court by intendment, to reconstruct the will to give effect to such intention. *Brotherton* v. *Bury,* 18 Beav. 65; *Martineau* v. *Briggs,* 23 Week. Rep. 889."

In *Demill* v. *Reid,* 71 Md. 191, in considering the question of when a certain remainder vested, JUDGE MILLER said the testator had the clear right to fix the time of vesting, and said "a Court has no right to put other words into his will, or to place upon those he has used any other than their usual and accepted meaning; and clearly not when there is no necessity for doing so." And the testator in the case

before us had as absolute a right to make the children of his wife by a second marriage the primary objects of his bounty, after his wife's death, as the testator in *Demill* v. *Reid* had to prescribe the time when a remainder created by him should vest.

And in *Abell v. Abell,* 75 Md. 58, JUDGE FOWLER said: "It will not do to say the intention must govern, and then by some strained or artificial course of reasoning, attempt to place upon the will a construction plainly repugnant to the language used therein by the testator. In other words, we must be governed not by what we may suppose the testator wished, but by what he says. And arguments based upon the supposed or known wishes of a testator in respect to the disposition of his property are not to be considered unless such wishes are expressed in his will. The short answer, says Chancellor Kent, which Courts are so often compelled to make to such arguments, is, *voluit, sed non dixit.*"

Certain it is, that if the language which the testator has here used, is to govern in the construction of his will, then any children his wife might have left by her second marriage, must have taken this property upon her death, and the decree of the Court below could only avoid that result by substituting for the will actually made, a reconstructed will to conform to the Court's opinion of what the testator should have been expected to do in making a will. The Court says, this estate, if the testator's wife had left a child by him and also a child by a second marriage would, if the clear language used is to govern, go equally to these two children; but that this would be contrary to "all reason and justice," that is to the opinion of the Court, and therefore the opinion of the Court shall prevail over the intention expressed in the will. Because the cases are rare in which a man makes any provision for the children of his wife by a second marriage, it is not to be assumed when such a provision is made that the testator has said what he did not mean to say, and that the Court is at liberty to undo what he has done.

Mr. Underhill in the second volume of his work on *Wills,* paragraph 551, says: "When the testator devises property to his widow, and after her death *'to her children,'* he will be presumed to mean not only those of whom he is the father, in which case the word 'her' will be exactly synonomous with 'our,' but also those who may be born to her by a subsequent marriage, when 'her' will have its proper meaning. The contrary however has been held in Louisiana, on the ground that a legacy cannot, by the peculiar law of that State be given a child not conceived at the death of the testator. *Sevier* v. *Douglas,* 4 La. An. 605."

Twice, in the will before us, the testator gives the broadest expression to his apparent purpose, first providing for "*any* child or children my said wife may have at her death," and later providing "in the event of my said wife dying without issue" that the estate should go to his heirs at law, showing his purpose not to confine the gift to her immediate children, but to extend it to her more remote issue.

We have not been referred to any other American decision than that above mentioned from Louisana, in which it does not appear that either the counsel or the Court questioned the intention of the testator, and the sole point of attack being the invalidity under the law of that State of such a limitation over to a person unborn.

In *Barrington* v. *Tristram,* 6 Vesey, Jr., 345, there was a bequest upon trust for the benefit "of all and every the child or children" of the testator's niece "Mrs. Tristram, the wife of the Rev. Thomas Tristram," distribution to be made at a certain period. Before that period, the Rev. Thos. Tristram died, and Mrs. Tristram married again and had a child by her second marriage. When the period for distribution arrived, the Tristram children claimed the whole estate, and the child of the second marriage claimed a distributive share. Lord Eldon held such child entitled to a share, saying that upon the general rule a child by a subsequent marriage was included, "since the testator has given to persons whom the

law makes certain." In the course of his opinion he said: "My private opinion is, he never thought of his niece marrying again, but the object was the children of Mrs. Tristram. The words 'the wife of the Rev. Thomas Tristram,' are merely words of description * * * and notwithstanding a strong conjecture against my judicial opinion, I am bound to declare that every child of Mrs. Tristram shall take." This case is not only a high authority illustrating the general rule applicable to the question, but it emphasizes the obligation to give effect to the testator's expressed intentions, and not to indulge conjecture however strong.

In *ex parte The Earl of Ilchester,* 7 Vesey, Jr. 348, the testator being married, but not then having any children, gave the guardianship of all his daughters born or to be born, to his wife, and of all his sons hereafter to be born, to his wife and his brother or the survivor, and it was held that this testamentary guardianship extended to all the children by that as well as by a second marriage. LORD ALVANLEY delivered an opinion, concurred in by LORD ELDON and by Sir Wm. Grant Master of the Rolls, in which LORD ALVANLEY said: "If I were at liberty to indulge conjecture, I should certainly be apt to suppose he had not in his contemplation any future marriage. I have read this will with an anxious desire to satisfy myself that I could state to your Lordship as my judicial opinion that it would admit of the restrained construction. I have ever thought it imposed upon me not to make any intendment contrary to the plain and usual sense of the words used, unless from other parts of the will, I could plainly see that the testator could not have intended them to have that extensive operation the words themselves could carry. * * * And I cannot see any decisive inference, that necessarily and unavoidably this testator must have meant to restrain the guardianship to the children of his then wife."

But apart from the binding authority of the rule of construction established in the cases cited above we think there

are indications in this will that the testator had in his mind
the contingency of a second marriage by his wife, in event
of her surviving him, and that he used the broad language
he did with knowledge of the effect it would have.

The technical language used in parts of this will indicates
that it was drawn by a lawyer and as it is witnessed by Mr.
E. C. Gantt, now deceased, but known to this Court as a
capable and careful lawyer it is a fair inference that he was
the draftsman, and that he did not permit the testator to
execute this will without explaining to him the important
effect of what is certainly an unusual provision to be made.
By the first disposing clause of the will he gave $3,000, the
equivalent of one-fourth of his estate, in trust for his wife's
sister, Mrs. Warfield, for her life and after her death to her
two children then living, with any other children she might
afterwards have. This was a strong manifestation of regard
and affection for his wife's sister, and of interest in the blood
of his wife's family, and it was a large bequest in view of
the comparative amount of his whole estate. By the next
clause he bequeaths to Mrs. Warfield's son, whom he desig-
nates "*my* nephew," the watch and chain he wore, articles
of personal use, almost always bequeathed to children, or
one standing in the place of a child. By the next clause he
directed the conversion of all his real and personal property
into money and the proceds to be invested by his executor in
securities, not in the name of a trustee, but in the name of
his wife, "to be held by her, during her life, without impeach-
ment of waste, or let or hindrance from any person whomso-
ever * * * she to have sole control. * * * And in event of
my said wife having any child or children at the time of
her death, I will and devise the whole of said estate to said
child or children." In these provisions there is an irresisti-
ble suggetsion that he knew or believed, that he would have
no children of his own, for if he contemplated or hoped for
children, and it was his intention that his own children only
if there were any, should take this property on her death, the

provision against impeachment of waste, or let or hindrance by any one becomes unintelligible, being applicable only to personal securities standing in her own name. Without intimating what the legal effect of that provision would have been, if she had encroached upon the corpus of the fund placed so absolutely by the will in her control, it is obvious that it suggested the power of consumption, which is not reconcilable with its preservation for *his* children, though not irreconcilable with the view that in the absence of children of his own he wished her to have absolute control of the estate not only for her own uses but for those of any children she might have in event of a second marriage.

Other considerations tending in the same direction have been suggested in the argument, but we shall not pursue them further, the result of our most careful reflection being that the words "any children" as employed by the testator would embrace children of his wife by any second marriage.

Having reached that conclusion, it must of necessity follow, that the remainder limited to the heirs of the testator could not vest until the death of Mrs. Howard. In *Demill* v. *Reid,* 71 Md. 191, JUDGE MILLER says: "It seems to us to be clear law, as well as good sense, that in a case where there is an ultimate limitation upon a contingency, to a class of persons plainly described, and there are persons *in esse* answering the description when the contingency happens, they alone can take." The contingency upon which the remainder was limited to vest in the heirs at law of the testator was the death of Mrs. Howard without issue, and until her death that contingency was not determined.

It cannot be denied that the limitations both to the children of Mrs. Howard, and to the heirs of the testator are contingent. They are alternative contingent remainders, dependent upon a contingency with a double aspect. The remainder to the heirs at law is alternative to the remainder to Mrs. Howard's children, and they are both contingent because the persons to take in each are not ascertained.

Among the numerous cases in this State discussing the vexed question of the vesting of remainders the recent case of *Thom* v. *Thom,* 101 Md. 444, seems more closely to resemble the present case, and we shall quote from it at some length.

JUDGE JONES said: "The grantor, Wm. H. DeCourcy Wright first gave to his daughter, Mrs. May, afterwards Mrs. Thomas, an equitable life estate in the property during the joint natural lives of herself and her then husband; then an equitable estate to the survivor of them with power to such survivor to devise and bequeath the estate among the children or descendants of Mrs. May and her then husband; then without here reciting all the terms of the trust he provides for the final full fee simple interest in the property vesting in the children and descendants of Mrs. May and her then husband. Here the first of the alternative fee simple estates provided for in the deed is made to vest if the contingencies should happen to call it into existence; and if it came into existence, it necessarily excluded all other interests and estates in the property. But in case the conditions provided for in his deed should never exist, and necessarily *only* in case they should never exist, he made the alternative disposition of the ultimate interest in the property by providing * * * that the property should go to and vest in such persons as would by the now existing laws of Maryland be the heirs at law of the said Wm. H. DeCourcy Wright and for their heirs forever. Here the second of the alternative fees provided for by the deed rested. And it was in entire substitution for and exclusion of all other interests in the property, because it could not come into existence until all previous interests so provided were beyond the possibity of existence. The first fee was provided for under conditions specified. When, and only when the conditions that were to bring that into existence did not exist and could not exist, was the other to be called into existence. The existence of the latter began when all possibility of the other ceased."

This exposition of the nature and operation of alternative contingent remainders, and the demonstration of the impossibility of the later vesting while there is a possibility of the vesting of the earlier, is so clear and conclusive, that we shall not prolong this opinion by any reference to, or attempt to reconcile, the many cases involving the general question, and so fully and ably discussed by counsel in their briefs, and shall content ourselves with declaring that the remainder to Mr. Hopkins' heirs at law did not vest until Mrs. Howard's death, and then only in Mrs. Schapiro, as the sole representative of that class, *in esse.*

The remaining question is whether the interest thus taken by Mrs. Schapiro passes under her deed of trust to the Safe Deposit and Trust Company.

There can be no doubt of Mrs. Schapiro's intention to convey such interest, however acquired, when she executed that deed of trust on July 6th, 1899, but as Mrs. Howard was then living, and as the remainder to the heirs at law was at that time contingent, and the person to take unascertained, it is contended for Mrs. Schapiro that she had but a mere possibility which was not assignable.

"The common law declares all contingent estates, when the person to take is not ascertained, to be a mere possibility not coupled with an interest, and to be neither devisable, descendible, alienable by voluntary conveyance nor subject to execution. 4 *Kent's Commentaries,* 261; 2 *Wash. Real Property,* 238. Such a naked possibility is in law neither an estate, property, right nor claim. One having such a possibility may in the *future* have a right, but cannot be correctly said to have any *existing* right or claim." *In re Banks Will,* 87 Md. 440, where the question is discussed at some length.

In *Marshall* v. *Safe Deposit Company,* 101 Md. 1, one of the questions was whether a deed of trust made by Samuel H. Mercer to the Safe Deposit Company passed to it an interest in certain property which he afterwards acquired

under the will of Lavinia Hopkins, and JUDGE McSHERRY said: "Before the deed of trust can be said to include the accruing share with which we are now concerned, it must appear that that share was an existing or contingent interest to which Samuel was *entitled* when the deed was executed, and that the granting clause of the deed contains apt and sufficient words to transfer that interest."

In *Fisher* v. *Wagner,* 109 Md. 243, this Court held that where a contingent remainder after a life estate is limited to a person who is definitely described, it may be devised by him, although he dies before the happening of the contingency which is to vest the estate in him, but JUDGE BOYD, in delivering the opinion of the Court, said, that "Robert A. Fisher took a transmissible and devisable estate under the will of his father, *as the person to take was certain,* and there was nothing in the will of the father which indicated his intention that such interest or right as a contingent remainder-man may have before the happening of the contingency, should be postponed until the death of the life tenant." The italics are those of the Court. JUDGE BOYD also referred to "a distinction made by some authorities between the case of a person designated to take a remainder upon the happening of a future contingency, and that of persons forming a class which is to take in the same contingency," which distinction he said "has not only been recognized in this State but seems to us to be a logical one."

For these reasons we are of opinion that Mrs. Schapiro's deed does not operate to convey the estate in question. Where a deed is based upon a substantial and valuable consideration, and the grantor, in return for such consideration attempts to convey property thereafter to be acquired, a Court of Equity will enforce a conveyance in a proper case, but where the consideration is merely nominal, equity will not interfere. *Miller's Eq.,* sec. 687, *Black* v. *Cord,* 2 H. & G. 103, *Cox* v. *Sprigg,* 6 Md. 287, quoting from *Atherly on Marriage Settlements.* "that as against the settler himself

equity should in no case enforce a voluntary agreement."
"The principle of the Court is to withhold its assistance
from a volunteer, whether he seeks to have the benefit of a
contract, or covenant, or settlement." *Snyder* v. *Jones,* 38
Md. 552. "It is not enough that the settlor executed a paper
purporting to pass it, if in fact the paper does not have that
effect. The intention of the settlor to divest himself of the
legal title must be consummated and executed, or the Court
will not enforce the trust." *Perry on Trusts,* sec. 100. Mrs.
Schapiro's deed· of trust recites by way of preamble her de-
sire to place her property in trust, and the acceptance of the
office by the trustee, and then alleges the consideration to be
"the premises, the sum of five dollars and other valuable con-
siderations." Without intimating any opinion as to the
character of the consideration as expressed in the deed, we
may say that nothing we have said will preclude any appro-
priate proceeding to enforce a conveyance upon the theory
of an adequate consideration. therefor.

For the reasons we have stated the decree appealed from
will be reversed, but this will be without prejudice to the
right of the Safe Deposit and Trust Company, as trustee
under the deed from Mrs. Schapiro to proceed for enforce·
ment of a conveyance of the property acquired by Mrs.
Schapiro as a result of this decision.

> *Decree reversed in No. 42 and affirmed in*
> *43. The costs above and below to be*
> *allowed out of the trust estate.* ·