McCann *vs.* Preston.

(Filed 15th March, 1894.)

JULIA E. McCANN, and JAMES J. McCANN *vs.* JAMES
B. PRESTON, and CAROLINE J. PRESTON, use of
ANNIE E. HAMNER.

*Action on Promissory note—Parol evidence to Explain a
Written contract—Latent ambiguity— Word " duplicate"
in a Promissory note—Foreign bills of Exchange—Evi-
dence—Money counts—Fraud not Presumed—Evi-
dence—Rescinding contract—Reasonable time.*

On the 21st of February, 1885, the plaintiffs obtained a loan from
H. of $2500, and to secure its payment made a mortgage to her
of the leasehold interest in certain houses on Vincent alley, and
delivered to her their joint and several promissory note for
$2500, bearing even date with the mortgage, and payable five
years after date. Subsequently, on the 4th of January, 1889, an
arrangement was made for an exchange of the equity of re-
demption in the Vincent alley houses for a tract of land, the
property of Mrs. McCann, one of the defendants. As part of
the transaction a deed was executed by the plaintiffs assigning
their interest in the Vincent alley houses to Mr. McCann, the
other defendant, which contained no assumption by the defend-
ants of the said mortgage debt. To supply this omission, an
agreement was signed and sealed by the defendants, by which
they assumed the payment of said mortgage debt, and con-
tracted to deliver to the plaintiffs their promissory note for
$2500, and two interest notes for $75 each, the principal note
payable the 23d of February, 1890, and the two interest notes

in six and twelve months respectively from the 23d of February, 1889. The three notes were given accordingly. The principal note was as follows: "$2500. Baltimore, Feb. 23d, 1889. One year after date, we jointly and severally promise to pay to the order of J. B. P. and C. J. P. twenty-five hundred dollars, a note to secure mortgage debt on twelve Vincent alley houses. —duplicate. Value received. Julia E. McCann, James J. McCann." The defendants having failed to pay said note at maturity suit was brought on the same. The declaration contained the six common counts in assumpsit, and a special count on the note. General issue pleas were filed, and the suit was entered to the use of H., the payee in the note, to secure which the mortgage had been given. On appeal by the defendants from a judgment in favor of the plaintiffs, it was HELD:

1st. That the rule that parol proof cannot be admitted to vary or contradict the terms of a written contract did not exclude the admission of testimony to explain the meaning of the word "duplicate," which, standing where it did, bore a doubtful relation to the other parts of the note, and failed to express with certainty its meaning.

2nd. That the word "duplicate" as used in the note could not be regarded as performing a similar office to that in which it is generally employed in foreign bills of exchange.

3rd. That there was a latent ambiguity in the word as used, and parol proof was admissible to explain its meaning.

4th. That the two notes and the agreement were admissible in evidence as parts of the *res gestæ*, and as explaining the manner in which the plaintiffs came into possession of the note of the defendants, and the purpose which it was to accomplish in the matter of the exchange of the properties.

5th. That the note sued on formed no part of the agreement under seal, by the express terms of which the defendants agreed to deliver said note to the plaintiffs.

6th. That whether said note was negotiable or not could have no bearing upon the determination of the case, the same never having passed from the hands of the original payees, the plaintiffs, and if any legal objection existed to its admissibility under the special count on the note it was clearly admissible under the common counts for money lent, for money had and received, and upon an account stated.

7th. That there was no proof of any fraud practised on the defendants by the plaintiffs, and none would be presumed.

8th. That if the defendants had desired to rescind the contract because of its fraudulent character, they should have done so within a reasonable time.

McCann *vs.* Preston.

9th. That the conveyance of the Vincent alley houses to Mr. McCann, instead of to his wife, the owner of the property given in exchange for said houses, furnished no ground of defense to the action, there being no evidence of any misconduct on the part of the plaintiffs in connection with the execution of the deed.

APPEAL from the Circuit Court for Harford County.

The case is stated in the opinion of the Court.

The cause was argued before ROBINSON, C. J., BRYAN, FOWLER, PAGE, ROBERTS, MCSHERRY, BOYD, and BRIS-COE, J.

*Charles J. Bonaparte,* for the appellants.

*W. George Weld,* and *Stewart Brown* (with whom was *F. W. Brune,* on the brief), for the appellees.

ROBERTS, J., delivered the opinion of the Court.

This action was originally brought in the Circuit Court for Baltimore County. It was thence removed, upon affidavit by the plaintiffs, to the Court of Common Pleas of Baltimore City, where it was tried, and a verdict rendered for plaintiffs. In consequence of the sickness and death of the presiding Judge, the exceptions taken during the progress of the trial were not signed, and a new trial was accordingly granted. The case was then removed, upon affidavit by the defendants, to the Circuit Court for Harford County. The trial in Harford County also resulted in a verdict for the plaintiffs. From the rulings of that Court this appeal is taken. During the progress of the trial there were 'four bills of exception taken by the defendants, three of which relate to questions of evidence, and the other to the action of the Court in granting the plaintiffs' prayers and rejecting the defendants'. The

testimony in the record discloses this state of facts: The plaintiffs were the owners of a leasehold interest in twelve houses on Vincent alley in the City of Baltimore, each subject to a ground rent of $30 per annum. On the 21st of February, 1885, plaintiffs obtained from Miss Hamner a loan of $2500, to secure the payment of which sum they mortgaged the twelve houses on Vincent alley, and executed and delivered to Miss Hamner their joint and several promissory note for $2500, of even date with the mortgage, and payable five years thereafter.

Subsequently on January 4th, 1889, John P. Clark, a broker, residing in the City of Baltimore, acting for both the plaintiffs and the defendants, brought Mr. Preston and Mr. and Mrs. McCann together at his office, and succeeded in arranging an exchange of the equity of redemption in the Vincent alley houses for a tract of land in Baltimore County, the property of Mrs. McCann, one of the defendants. The day before the meeting at Clark's office a deed had been executed by the plaintiffs assigning their interest in the Vincent alley houses to Mr. McCann, the other defendant.

Whilst the exchange was in progress, J. Harry Preston, a lawyer, and a son of the plaintiff, James B. Preston, came into Mr. Clark's office to see his father, and finding him about to conclude the exchange of properties just mentioned, he examined the deed which the plaintiffs had the day before executed, and ascertained that it contained no assumption by the defendants of the mortgage debt due from the plaintiffs to Miss Hamner, and thereupon he objected to his father concluding said exchange without such an assumption by the defendants.

This they agreed to do, and as the deed already executed did not accord with the terms of the exchange, it was necessary either to rewrite it, making it conform to the terms agreed upon, or to supplement it with such a writing as would accomplish the purpose. Accordingly

an agreement was prepared, which was signed and sealed
by the defendants, whereby they assumed the payment
of said mortgage debt, and provided therein the mode by
which said assumption should be accomplished. By the
terms of the agreement, the defendants assumed the pay-
ment of said mortgage debt and contracted to deliver to
the plaintiffs " their *promissory note* for twenty-five hun-
dred dollars, and their two interest notes for seventy-five dol-
lars each. The principal note, payable February 23d, 1890,
and the two interest notes to be paid in six and twelve
months respectively, from the 23d of February, 1889." Ac-
cordingly, the defendants passed to the plaintiffs their notes
as required by the agreement. The note for the principal
sum, which is in controversy here, reads as follows:

$2500.00.                    BALTIMORE, Feb. 23d, 1889.

One year after date we jointly and severally promise to
pay to the order of James B. Preston and Caroline J. Pres-
ton, twenty-five hundred dollars, a note to secure mortgage
debt on twelve Vincent alley houses—a duplicate.

Value received.                    JULIE E. McCANN.
No.——— Due———                    JAMES J. McCANN.

The defendants having failed to pay at maturity the
above note, suit was brought on the same on the 29th of
October, 1890. The declaration contains the six common
counts in assumpsit and a special count on the note. On
March 2d, 1891, general issue pleas were filed, and on the
same day the suit was entered to the use of Annie Ham-
ner, the payee in the note, to secure which the mortgage
had been given. Additional pleas on equitable grounds
were subsequently filed, but it is conceded there was no
sufficient evidence to sustain them, and they require no
further attention.

The first questions which this appeal presents for our
consideration relate to the admissibility in evidence of the

note sued on, of the note delivered by the plaintiffs to Miss Hamner contemporaneously with the mortgage, and of the written agreement by which the defendants assumed the payment of the mortgage debt. In the first instance it is contended that the use of the word *"duplicate"* in the note sued on indicates that it is not the only original, but is an original secondly signed, in like manner as foreign bills of exchange are drawn.

There can be no doubt as to the well recognized rule respecting foreign bills of exchange, that in such case " the bill must be produced at the trial in all the parts or sets in which it was drawn." But this rule can have no force in a case where the note is not drawn in sets and is not a duplicate in the sense just adverted to. The testimony in the record shows, beyond controversy, that the note in question was not executed in sets, but was the sole original, executed by the defendants in compliance with the terms of the agreement which they had signed and sealed at the time the note was given, and which fully explains the whole transaction. The only purpose, if any, which the plaintiffs could have had in writing on said note the word *"duplicate"* was manifestly not for their own benefit, but for the protection of the defendants, as in this form it was out of the usual line of inland paper and well calculated to suggest inquiry. If, however, the note of Miss Hamner could be regarded, in any sense, as the original, and the one marked " *duplicate*" was, for any particular reason, intended to be treated as a duplicate thereof, the plaintiffs have produced and offered in evidence both notes, and thus strictly complied with the rule, " that the bill must be produced at the trial, in all the parts or sets in which it was drawn." But when we consider the testimony in the record pertaining to this subject, which we think legally admissible to explain the manner in which the word came to be written on the note, all doubts are removed. It is however claimed that.

this view violates the established doctrine that parol proof cannot be admitted to vary or contradict the terms of a written contract. But this rule finds no application here, since the testimony neither directly nor remotely varies or contradicts the note, but simply explains the meaning of a word, which, standing where it does, bears a doubtful relation to the other parts of the note, and fails to express with certainty its meaning.

The word " *duplicate* " as used in this case, cannot be regarded as performing a similar office to that in which it is generally employed in foreign bills of exchange. It is only necessary to refer to the language of the note itself to be convinced that the word was never intended to refer, as it does in some instances, to notes drawn in sets or parts. It is, according to its express terms, " *a note to secure mortgage debt on twelve Vincent alley houses.*" Mr. Justice BRYAN, delivering the opinion of this Court, in *Farrell vs. Mayor, &c.,of Baltimore,*75 *Md.,*494,says : " It is the duty of the Court in construing written instruments to ascertain their meaning; and this must be done, even if it is necessary to depart from the literal meaning of the terms employed. Judge STORY mentions a case where a person signed a paper in these words: " Borrowed of J. S. fifty pounds, which I promise *not* to pay," and it was held to be a good promissory note, and that the word *not* ought to be rejected. *Story's Promissory Notes, sec.* 12. Here the meaning was evident upon the paper, as it stood, without any change. It was not necessary to reform the instrument, because the Court construed it to mean what the parties must have intended, although in direct opposition to the words used." There is a latent ambiguity in the word as here used, and the Court below was unquestionably right in admitting parol proof to explain its true meaning. We think the Court below was clearly right in admitting the two notes and the agreement in evidence as parts of the *res gestæ,* and as

explaining the manner in which the plaintiff came into possession of the note of the defendants, and the purpose which it was to accomplish in the matter of the exchange of the properties. It is admitted that the defendants assumed the payment of the interest notes, but it is contended that they did not assume the payment of the principal note for $2500. But the terms of the agreement and the testimony of the plaintiffs' witnesses leave no ground open for theory or speculation as to the meaning of both parties. It has been earnestly contended that there is substantial variance between the pleadings and the proof offered by the plaintiffs to sustain the several counts in the declaration. As hereinbefore stated the *narr.* contains the first six common counts in assumpsit (Code, Art. 75, sec. 23) and a special count on the note of the defendants.

The note forms no part of the agreement under seal, by the express terms of which the defendants agreed to deliver to the plaintiffs the note sued upon, and it was accordingly so delivered. The defendants having failed to pay the same at maturity, brought suit thereon, as hereinbefore stated, and entered the same to the use of Miss Hamner, and thus restricted the application of the proceeds of said note, when collected, to the discharge of the mortgage debt. Whether the note sued on was negotiable or not can have no possible bearing in the determination of this case. The note never passed from the hands of the original payees, the plaintiffs, and if any legal objection existed to its admissibility under the seventh count, which is the special count, on the note, it was clearly admissible under the third, fifth and sixth of the common counts. A promissory note between the *immediate parties* thereto has been repeatedly held to be good evidence to support a count for money lent, for money had and received, and upon an account stated. *Wayman vs. Bond,* 1 *Camp.,* 175; *Bayley on Bills* (*6th ed.*), 362.

It is laid down by Chitty on Bills of Exchange, supported by many other authorities, that it is not necessary to declare on a promissory note, between the original parties to it, but in an action for money lent the same may be given in evidence. The statute of 3 and 4 Anne, ch. 9, which enables the holder to declare on the note, has been construed as conferring only an additional or cumulative remedy. *Beck vs. Thompson & Maris,* 4 *Harr. & J.,* 536, 537. There remains one other question which we deem it necessary to consider. It is contended by the defendants that "they understood perfectly all about the exchange of properties, and agreed to make the exchange; that they also understood themselves to have assumed an obligation to pay the interest on Miss Hamner's mortgage; and they signed papers which they were led to believe contained or carried out this understanding, but that they never agreed to sign, or signed knowingly, any papers by which they became bound personally to pay the *principal* of the mortgage debt, and that their signatures to such papers were obtained by misrepresentations of facts." This proposition, however, is not sustained by any evidence legally sufficient for that purpose. There is not to be found in the testimony of either of the defendants (and they are the only witnesses who testified in their own behalf) a single representation made by the plaintiffs, or either of them, or by any one acting for them, which was proximately or remotely calculated to deceive or mislead them. Their testimony was of the most vague and unsatisfactory character, and entitled to but very little consideration as tending to establish fraud. Mrs. McCann, one of the defendants, who could read and write, and seemingly a fairly intelligent person, says, if she had known that she was signing the note for $2500 she would not have done so. Yet she acted of her own free will, without any representation on the part of the plaintiff, save only she heard Mr. Clark, the broker, say: " ' These are interest notes that

ought to be signed.  He put them on the desk and showed me where to sign them; none of them were read; nothing more was said.  Mr. Clark said interest notes, or *something*, and got them out." Mr. McCann, the other defendant, testified that " at the same time witness and his wife were requested to sign some ' interest notes,' and signed them, but witness recollected *nothing* about his having signed any other papers whatsoever." Yet Mrs. McCann admitted in her testimony that both she and her husband had signed not only the note sued on, but also the agreement offered in evidence.  Clark's statement as to the interest notes was not a misrepresentation, but in every respect essentially accurate.  There is nothing in this case which exempts it from the control of the principles of the law, usually applied in the consideration of questions of the character now presented for our determination.  Fraud, like any other fact, must be established by satisfactory proof; it will never be presumed, for it is a maxim well recognized in the law that " *odiosa et inhonesta non sunt in lege praesumenda.* "

It is not only necessary to prove fraud, but the fraud practised must have worked an *actual injury* to the defrauded party. *McAleer vs. Horsey*, 35 *Md.*, 453.  You will look in vain through the pages of the record for the slightest evidence of actual injury to these defendants.  Their desire to give up the Vincent alley houses, and their refusal to have anything further to do with them, do not constitute proof of injury; nor is there any testimony in the record for which the jury were at liberty to have awarded damages resulting from actual injury.

If the defendants desired to rescind the contract because of its fraudulent character, they should have done so within a reasonable time.  In this case there is no evidence even of dissatisfaction until after the expiration of more than a year.

It may be that the defendants have not profited by the

exchange which they made, but it by no means follows, as a legal result, that they can now ask the law to relieve them from the consequences of a bad bargain.

In what we have said, we must not be understood as intimating that there has been the slightest evidence of unfair dealing on the part of the plaintiffs. The proof in the record establishes no such fact. Considerable stress has been laid upon the conveyance of the Vincent alley houses to Mr. McCann instead of his wife, Mrs. McCann, who was the owner of the property given in exchange for the Vincent alley houses. But we have, by a careful examination of the testimony, failed to discover any misconduct on the part of the plaintiffs in connection with the execution of the deed. Mr. McCann, who appears more than his wife, yet mostly in her presence, to have actually participated in the negotiations for the exchange, admits in his testimony that no instructions had been given as to how the deed should be prepared. It was by him immediately placed upon record. If this location of the title was not in accordance with the wishes of the defendants, as they seem to have been of one accord respecting the same, a complete remedy yet remained within easy reach. Mr. McCann could, with but small expense, have assigned the equity of redemption to Mrs. McCann. Most certainly this circumstance contributes nothing in aid of the defendants' contention. Without having treated *seriatim* all the questions arising on this record, yet, in what we have said, we have passed upon such of them as we have considered necessary to be determined on this appeal. It results from what we have said that we find no error in any of the rulings of the Court below, and the judgment must, accordingly, be affirmed.

*Judgment affirmed.*

(Decided 5th April, 1894.)