MARY A. FARMER, Trustee and Individually, and
MARGARET M. FARMER.

*vs.*

## TRUST ESTATE OF PATRICK M. QUINN.

*Wills: intention of testator.   Extrinsic evidence: valuation put
by testator of stock in trade; to be charged to legatee.
Evidence of trustee in former trust proceedings.
Partition proceedings: agreement between
parties so as to avoid sale.*

In general, extrinsic evidence is not admissible to show a testator's intention was different to what his will discloses.  p. 563

But where a testator devised his stock in trade to his nephew at the "invoice price" which he named in his will as so much, and which was to. be charged against his nephew in the general distribution of the testator's estate according to certain trust provisions in the will, evidence was held to be admissible to show what was the real invoice price of the stock in trade, and that it was less than the price named by the testator.     p. 566

The statements of the trustee and executor under the will in accounting for the estate in court was evidence as to what was such real invoice value, and it was *held,* that after thirty years it would be unjust to charge the legatee's share then distributable to his widow and children, with a burden largely in excess of what he had been required to assume.          p. 566

The evidence of the trustee before the auditor in the original trust proceeding was not in opposition to the rule limiting the use of testimony of deceased witnesses; such testimony was part of a judicial proceeding for the administration of the question upon which the subsequent controversy arose.                    p. 566

Where an estate consists partly in cash and partly in real estate, a sale of the real estate could be avoided, on partition proceedings, if the parties could voluntarily agree upon the valuation and upon the value of the shares of each; but in the absence of such an agreement there is no alternative but to sell the property and to divide the proceeds.                    p. 567

*Decided January 15th, 1919.*

Appeal from Circuit Court No. 2 of Baltimore City. (AMBLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Isaac Lobe Straus* (with whom was *Stephen J. McDonough* on the brief), for the appellants.

*S. S. Field,* for the appellee.

URNER, J., delivered the opinion of the Court.

The will of Patrick M. Quinn, of Baltimore City, who died February 9, 1886 contained the following provision:

"It is my wish that my nephew, James F. Farmer, shall conduct the business lately carried on by me, after I shall have gone, in the same way as I carried it on; and to that end I hereby give and bequeath unto him

> all of the merchandise now on hand in my store at the
> corner of Hillen and High streets, with the furniture
> and office effects therein, the same to be debited and
> charged to him, however, at the present invoice price
> of eight thousand six hundred and seventy-six dollars,
> of which amount he shall pay to my Executor herein-
> after named Twenty-six hundred and Seventy-six dol-
> lars, with interest at the rate of four per centum per
> annum, in such time, or on such credit as he, my execu-
> tor, may see proper to indulge him; it being my wish
> that though he shall pay this last mentioned amount
> he shall not be pressed or embarrassed in doing so;
> and the balance of six thousand dollars with interest
> at the same rate of interest shall be deducted from the
> share of my estate in the final distribution thereof as
> herein provided for."

The residuary estate of the testator was devised and be-
queathed in trust for his three sisters for life and after
the death of the last survivor, then to the six children of a
deceased sister, including the nephew, James F. Farmer, to
whom had been bequeathed the merchandise and store effects
mentioned in the clause we have quoted. Another nephew,
Patrick J. Farmer, was named in the will as executor and as
trustee of the residuary estate under the limitations stated.

On June 10, 1892, the trustee filed a bill in the Circuit
Court of Baltimore City for the purpose of having the
Court assume jurisdiction over the trust.    With the will
were exhibited three accounts of the plaintiff, as executor
of the will, showing the administration of the testator's estate
in the Orphans' Court of Baltimore City.    The last of these
accounts was filed and approved in that Court on April 18,
1890.    It ascertained the total personal estate which passed
to the accountant as trustee under the will to amount in cash
and leasehold properties to $67,434.06.    In his bill of com-
plaint the trustee reported the investments he had made of
the trust funds, and his administration of the estate gen-
erally, during the preceding period.    The Circuit Court, in

its order assuming jurisdiction, referred the case to the auditor to state an account, and granted leave to the trustee to offer testimony before the auditor to prove the averments of the bill.

In pursuance of this order, the trustee himself testified as to his administration of the trust. Referring in his testimony to an allegation in the bill of complaint that, in addition to the amount stated in the administration account, he had received $2,505.24 from the administratrix of the estate of James F. Farmer, who died in 1888, on account of the money owing by him for the stock of merchandise bequeathed to him by the will, the witness explained as follows:

"By my uncle's will, his merchandise, stock of goods and chattels in his business at the time of his death were given to my brother James, he to be charged therefor the invoice price of $8,676, of which he was to pay $2,676, with interest at four per cent, and the balance was to be deducted from his share of my uncle's estate when divided. At the time my uncle signed his will he supposed the merchandise at invoice prices amounted to $8,676, but after his death we found out he was mistaken, that the store goods, etc., only amounted to $5,332.96. I, therefore, passed them over to James at those figures. After his death his widow paid to me on account of the $5,332.96 the sum of $2,505.24, leaving to be deducted from James' share $2,827.72, with interest from the death of my uncle at four per cent." The auditor's report, which was ratified by the Court, accordingly, charged the trustee, in the account of the principal of the trust estate, with $2,505.24 as: "Amount received by the trustee from the administratrix of James F. Farmer, being on account of money due for purchase of store of said P. M. Quinn by said J. F. Farmer." In the first of the executor's administration account, approved April 1, 1887, he had charged himself with $5,332.96, "being the appraised value of the merchandise and office furniture, etc., in the store of the deceased at the time of his death passed over and delivered by this account-

ant to James F. Farmer to whom the same were bequeathed by the deceased."

The adjustment of the merchandise bequest as thus indicated in the executor's account, and as described by the trustee in his testimony before the auditor, remained unquestioned for more than thirty years. But since the death of the last surviving life beneficiary of the residuary estate, which occurred in 1917, and the time having then arrived for distribution of the estate among the heirs and personal representatives of the six legatees in remainder, who are also deceased, the contention has been made that the share to which James F. Farmer would be entitled if living should be charged with the sum of $8,676, with interest at four per cent from the date of the testator's death. This claim was preferred in a petition, for the final distribution of the estate, filed by two grandnieces of the testator having substantial interests, one of whom appeared also in the capacity of a trustee of the estate, having been appointed, together with a grandnephew, to administer the trust, after the death of the original trustee in 1910. The appointment of the new trustee was made by the Circuit Court No. 2 of Baltimore City, the jurisdiction of that Court having been invoked for the purpose by some of the beneficiaries, in ignorance of the fact that the trust had long before been brought under the jurisdiction of the Circuit Court by the proceeding to which we have referred. To the petition filed in the second proceeding for the distribution of the estate, answers were filed by the widow and children of James F. Farmer, one of the latter answering also in his capacity as co-trustee of the estate. At the hearing of the case the record of the trust proceeding in the Circuit Court was admitted in evidence over the objection of the petitioners, and a decree was eventually passed by which it was determined that, according to the intent of the testator, his nephew, James F. Farmer, was to be charged for the merchandise and store effects at "the present invoice price, as of the time when the will

took effect," but that, according to the evidence, the "present invoice price" was not the amount $8,676 mentioned in the will, but was $5,503.72, and of that amount there was paid to the trust estate the sum of $2,505.04 by the widow and executrix of James F. Farmer, leaving $2,998.48, which the Court found was chargeable against his share under the will, with interest thereon at four per cent from the time of the death of the testator. The difference between the balance thus ascertained and that stated by the original trustee when testifying before the auditor in the first proceeding is due to the fact that he forgot to take into consideration an item of $170.76, which appears in his first account as executor, and which is there said to represent an "amount paid James F. Farmer, being the proceeds of sale of certain goods in the store at the time of the death of the testator, but sold and delivered before the appraisement."

On this appeal by the petitioners from the decree just referred to the principal question is whether the Court properly admitted the record of the first trust proceeding, particularly the administration accounts therein exhibited and the testimony of the trustee before the auditor, and rightfully declined, in view of the facts thereby disclosed, to charge the share of James F. Farmer in the residuary estate with a greater invoice value of merchandise bequeathed than that which he actually received.

It has been earnestly argued on behalf of the appellants that the record evidence showing the real invoice value of the merchandise in question should have been excluded because it was offered for the purpose of giving to the will an application contrary to its plain intent. The general and familiar rule is invoked that extrinsic evidence is not admissible to show that a testator's intention was different from that which his will discloses. It is contended further that, apart from the objection just noted, the testimony of the trustee before the auditor in the original trust proceeding was not competent proof in the present case, because it was taken *ex*

*parte,* without opportunity for cross-examination, and does not come within the rule admitting the testimony of a deceased witness when offered in a subsequent trial between the same parties.

The principles upon which the appellants rely are well established, but there is difficulty in applying them to the case now presented. The rule excluding extrinsic evidence as to a testator's intention, does not prevent the admission of such evidence "for the purpose of determining the object of a testator's bounty, or the subject of disposition, or the physical quantity of interest intended to be given by the will." *Walston* v. *White,* 5 Md. 305; *Shipley* v. *Mercantile Trust Co.,* 102 Md. 659. No attempt is made in this case to prove that the testator's intention in regard to the bequest under inquiry was other than that which his will has expressed. It is clearly apparent from the will, and it is not sought to be questioned in the proof, that he intended his nephew to have the merchandise at its "present invoice price," and that he understood and believed its value, according to that standard, to be $8,676. The sole purpose and effect of the record evidence in the case was to show that the stock in trade was of less value, because less in quantity, than the testator had estimated. He was a wholesale liquor dealer, and the merchandise he bequeathed to his nephew was a stock of whiskey. Its invoice price being fixed by the will as the measure of its valuation, there was a ready and accurate means of ascertaining whether the testator's intention that the legatee should receive a quantity of the merchandise of the value of $8,676 at the designated price could be gratified. The clear effect of the trustee's testimony was to prove that the stock of whiskey received by the legatee was only sufficient in quantity to amount to $5,332.96 at the invoice prices. It was with distinct reference to such prices that he testified to the value of the stock and effects actually in the store at the time when the bequest became effective. While the executor's first account states the sum of $5,332.96

to be the "appraised value" of the merchandise and office fur-
niture, it may be regarded as reasonably certain, in view of
the explicit reference in the will to the invoice price as the
basis of value, that the goods were in fact appraised on
that basis for the purposes of the administration. The will
was executed only a few hours before the testator died. The
testimony does not show for how long a period before his
death he had been ill. It does not appear how or when the
testator obtained the estimate, which he used in his will, of
the "present invoice price" of the merchandise in his store.
But it is affirmatively proven that the property to which the
bequest was intended to apply was in fact insufficient to meet
the measure of value which it prescribed. In other words,
it was found that the testator's intention to bequeath his
nephew a designated stock in trade of a certain value accord-
ing to a specified price standard could not be fully effectuated.
The practical question which this development presented to
the executor and to the legatee was adjusted upon a basis
that appears to have been entirely reasonable. The legatee
accepted the bequest to the extent to which it could be deliv-
ered and was charged for the part he actually received at
the rate of valuation fixed by the will. As the executor
was also one of the residuary legatees and had thus a per-
sonal interest adverse to that of the nephew to whom the
store goods were bequeathed, there can be no reason to doubt
that in the adjustment of this bequest, in the manner de-
scribed, the general interests of the estate were properly
guarded. If it had been demanded of the legatee that he
take the deficient stock in trade and be charged therefor
the full amount estimated in the will, it is probable that
the bequest as a whole would have been declined. It is hard-
ly to be supposed that he would have been willing to be
charged for the goods upwards of three thousand dollars
more than they were worth, and could be bought for, at the
"present invoice price" of such merchandise, in the open
market. At all events, the question was settled by the execu-

tor and the legatee more than thirty years ago, in the way we have mentioned, and the practical fairness of their settlement is not open to dispute. It did not disregard, but sought to gratify the intention of the testator so far as it was capable of being fulfilled in the case of the bequest under consideration. It remained unchallenged, by anyone interested in the estate, from 1887 to 1917, although it was disclosed by the records of the administration of the estate by the executor and trustee, and we see no just reason why it should now be disturbed. On the contrary, in our view of the case, it would be plainly unjust, at this remote period after the settlement, and long after the death of the legatee and the executor-trustee, by whom it was effected, to charge the legatee's share of the estate, now distributable to his widow and children, with a burden largely in excess of that which he was required or agreed to assume. No principle applied in any of the numerous cases cited by the appellants, as appropriate to the facts therein considered, prevents our adoption of the view we have just indicated as founded upon the special facts and evident equities of the present case.

In regard to the contention that the admission of the testimony of the original trustee before the auditor in the trust proceeding was in opposition to the rule limiting the use of the testimony of deceased witnesses, it is to be observed that this evidence constitutes a part of the record of a judicial proceeding for the administration of the very trust under which the question in controversy has arisen and upon which the rights of all the parties depend. The testimony now · objected to was given in pursuance of a court's order, by a trustee representing all· interests in the trust, for the purpose of reporting and explaining certain facts relating to the origin, assets and investment of the estate. The use of such a record to aid in the determination of such a question as the one we have discussed is not forbidden by the rule of evidence which the appellants have invoked.

The decree appealed from provided for a sale of the real and leasehold properties belonging to the trust for the purposes of distribution. These properties could not be divided in kind among the parties entitled. The appellants proposed that the shares of the appellees be paid out of the ample cash assets of the estate, and that a sale of the real and leasehold properties should be thus avoided. But in order to ascertain the amount of the shares to which the appellees were entitled, it was necessary for the parties to agree upon a valuation of the properties which the appellants would take as a part of their shares. No agreement, however, was reached upon that point, although such an adjustment was urged by the Court as the means of obviating the cost and delay incident to a sale. There was consequently no alternative but to direct the properties to be sold and the proceeds distributed under the terms of the trust.

*Decree affirmed, the costs to be paid out of the trust funds.*