JESSE DARDEN ET AL. *v.* ROBERT S. BRIGHT, EXECUTOR

[No. 89, October Term, 1937.]

*Decided April 8th, 1938.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Wendell D. Allen* and *H. Vernon Eney,* with whom were *A. Stengle Marine* and *Armstrong, Machen & Allen* on the brief, for the appellants.

*V. Calvin Trice,* for Robert S. Bright, executor, appellee.

*Q. C. Davis, Jr.,* for the children of Louis C. Darden, appellees.

PARKE, J., delivered the opinion of the Court.

The will of James G. Darden, who died on November 18th, 1933, was duly executed on September 14th, 1931, and was admitted to probate on November 24th, 1933. He had no issue, but he was survived by his wife. Three of his brothers and a sister had died before the date of the will without leaving any descendants. Another sister had died a number of years before the will was drawn,

and had left an only child who was alive at the date of the will. A brother of the testator had died on November 7th, 1923, and was survived by six children, all of whom were living at the time of the execution of the will and are now alive. The remaining brother was alive when the testator made his will, and at his death. This brother has nine children, all of whom were alive when the will was executed and when the testator died. With this family relation in mind, the testator made a will which disposed of a large estate that, at his death, had become much less in value.

The will provided for his burial and the payment of all his debts, and then devised and bequeathed to his wife only such portion of his estate as she would have received if he had died intestate. By the next paragraph he made bequests in language which has given rise to the controversy at bar. The exact words are these: "Fourth: I give and bequeath, free of tax, the sum of Five thousand dollars to each one of the children of my brother, provided they are living at the time of my decease. If any of such children are then deceased the said legacy shall lapse and become part of my residuary estate."

By the fifth paragraph, the testator devised and bequeathed all the residue of his real and personal estate of every kind absolutely and in fee to four persons as tenants in common. They were two daughters of an old friend, a former close and intimate business associate, and a friend who was his legal adviser. The legal adviser was made the sole executor. The other provisions relate to the details of the administration of the estate and the powers of the executor, and do not affect the questions at bar.

Louis C. Darden is the name of the only brother who was alive at the execution of the will, and the chancellor construed the gifts to be to such of the nine children of this brother as might be surviving at the time of the testator's death. The construction, therefore, excluded the six children of the decedent's brother, Samuel Dar-

den, who was not alive at the time the will was written. These excluded nephews and nieces bring the present appeal.

The appellants urge that the language used is susceptible of more than one interpretation, but, when construed in the light of circumstances, shows that the children intended are those of the dead brother. If this be held untenable, then, in further illustration of the danger of letting plain words yield to an intention drawn from indefinite circumstances, an alternative benevolent construction is advanced that the testator's legatees embraced not only the surviving children of his dead brother, but also those of his living brother. The circumstances, which it is contended, support these alternative constructions, are found in the extrinsic evidence offered of facts and declarations to show an alleged testamentary purpose and preponderant or equal affection and interest of the testator in the dead brother and his children, so that the inference is to be made that he intended his gifts to be to the exclusion of the children of his living brother, or, at least, to include both classes of children as like beneficiaries. These efforts provoked countervailing extrinsic testimony to show that the construction of the chancellor is in harmony with the testator's purpose. Thus the court is, in effect, solicited to construe the written, final expression of the decedent's testamentary purpose in conformity with what may, on the conflicting testimony, be the court's conclusion of what the testator intended, notwithstanding the plain meaning of the words of the will and their clear and specific application to the subject and objects of the testator's bounty.

The aim of the construction of a testamentary document is to ascertain and declare the meaning of the testator in reference to the subjects and objects of his testamentary disposition. The canons which control the court are well established. There is always the necessity of translating the words of the will into things and facts. The translation may be impossible because of some in-

herent or patent defect of expression; or it may be so simple and clear of rendition as to make the application of the document to persons and objects immediately and directly apparent. *Hawman v. Thomas*, 44 Md. 30; *Cassilly v. Devenny*, 168 Md. 443, 450, 177 A. 919. But whenever the language admits of construction, the sense in which the testator used the terms of the document is to be sought in association with all the circumstances which tend to make clear the sense in which the words were understood by the testator. *Thayer on Evidence*, p. 425.

The words of a will are to be taken in their primary and usual meaning, unless customarily used by the testator in a sense peculiar to himself. There is nothing on the record to indicate that the words of the will are to be taken in other than their ordinary and grammatical sense. The document was drawn according to the instructions of the testator by a competent attorney, who employed clear, consistent and appropriate language, and it was read and approved by an intelligent business man as the satisfactory expression of his testamentary purpose. There is no patent ambiguity, and the general rule is that no expression of intention with reference to the subject of the document may be considered. The reason is that an extrinsic statement may not be received to modify or nullify the words of a document. Moreover, an oral utterance would not be a compliance with the statutory requirement that a will be in writing. *Miller on Construction of Wills*, sec. 40. However, for the purpose of determining the objects of a testator's bounty, or the subject of disposition, or the quantity of interest intended to be given by the will, the court may inquire into every material fact relating to the person who claims to be interested under the will, and to the property which is claimed as the subject of the disposition, and to the circumstances of the testator and of his family and affairs, for the purpose of enabling the court to identify the persons or things intended by the testator, or to determine the quantity of interest he has given by his will.

*Wigram's Extrinsic Evidence in Aid of the Interpretation of Wills*, proposition V. *West v. Sellmayer*, 150 Md. 478, 481, 133 A. 333; *Hammond v. Hammond*, 55 Md. 575, 581; *Shipley v. Mercantile Trust & Deposit Co.*, 102 Md. 649, 659, 62 A. 814; *Marshall v. Haney*, 4 Md. 498, 507; *McCann v. Preston*, 79 Md. 223, 229, 28 A. 1102; *Courtenay v. Courtenay*, 138 Md. 204, 210, 113 A. 717; *Stahl v. Emery*, 147 Md. 123, 128, 127 A. 760; *Safe Deposit & Trust Co. v. Hutton*, 159 Md. 50, 59, 149 A. 689; *Suman v. Harvey*, 114 Md. 241, 251, 252, 79 A. 197. Furthermore, if the language of the will is plain and single, yet is found to apply equally to two or more subjects or objects, extrinsic evidence and declarations of intention, also, are permitted to assist in the interpretation of this latent ambiguity or equivocation, on the theory that, since the terms of the will describe two persons or objects with equal accuracy when only one is meant, "there," in the language of Wigmore, "can be no competition with the words of the document by declarations which merely expand and make more specific those words." *Wigmore on Evidence*, 2nd Ed., sec. 2472. The declarations are admissible for the purpose of establishing what the testator understood was signified by the words employed in the will. *Farmer v. Quinn's Trust Co.*, 133 Md. 558, 564, 105 A. 763; *Clarke v. Sandrock*, 113 Md. 422, 77 A. 644; *Schapiro v. Howard*, 113 Md. 360, 78 A. 58; *Board of Home Missions v. Lynch*, 168 Md. 117, 176 A. 619; *Frick v. Frick*, 82 Md. 218, 225, 33 A. 462; *Walston's Lessee v. White*, 5 Md. 297, 305; *Stokeley v. Gordon*, 8 Md. 496, 507; *Hawman v. Thomas*, 44 Md. 30, 43; *Cassilly v. Devenny*, 168 Md. 443, 448, 449, 177 A. 919. *Miller on Construction of Wills*, secs. 41-44.

Should the terms of the document, when applied to facts and things, be found certain, so that the sense in which the words were used is clear, the office of construction is at an end. The language of the will at bar is plain and precise. The subjects of the gifts are the several sums of $5,000, and its objects are, primarily, every one of the children of the testator's brother, if

living at the death of the testator, and, secondarily, the four named residuary legatees, in the event that a legacy should lapse by an original legatee not surviving the death of the testator. These clear terms have reference to the qualifications, at two successive stages in time, of the legatees. The two stages are, first, the time of the execution of the will, and, secondly, the time of the testator's death. At the date of the making of the will, the testator first defined the nephews and nieces with a potential right of legacy to be one of the then living or future born children of testator's brother. *Miller on Equity Proc.*, sec. 9, pp. 41, 42, sec. 39, sec. 86; *Benson v. Wright,* 4 Md. Ch. 278, 279; *Shotts v. Poe,* 47 Md. 513, 519. See *Cowman v. Classen,* 156 Md. 428, 144 A. 367. After prescribing the conditions for admission to the number of potential legatees, the testator made survivorship at the time of his death a condition precedent for the potential right of any legatee to become a vested right. None but a living legatee could take. If death should intervene, the potential right of the legatee so dying would lapse, and the particular legacy would fall into and pass under the residuary clause. The necessity of a legatee being alive before and at the death of the testator demonstrates that the testator's mind and langauge were addressed to persons who were and would be alive within the period from the date of the will to the death of the testator, and this circumstance gives weight to the conclusion that "brother," in the clause "to each one of the children of my brother," is used in its ordinary and natural meaning of a living brother.

The text of the will is plain in its revelation of the testamentary design in other respects. It makes certain that the testator did not intend to die intestate, and that he had selected the particular objects of his favor. Aside from the legacies given by the paragraph of the will now under review, the devises and bequests are to his wife, who survived him, and to his friends and the daughters of a friend. In addition to these beneficiaries, his next of kin at the time of the writing of the will were a brother

and a sister, the son of a sister, who had died before
the making of the will, and the six living children of
a brother who had died seven years and ten months be-
fore the date of the will; and the nine living children
of the brother who was then and is now alive. Other
than his wife, who was provided for by the will, these
relatives were the natural objects of his bounty. The
brother and sister, and the child of a dead sister, are
excluded from participation in the estate by the terms
of the document. The remaining next of kin were the
nephews and nieces who were the children of a then
living and long since dead brother. Again, by express
terms he unquestionably eliminated one group of these
remaining nephews and nieces, and equally irrefutably
his will establishes that his meaning was to give a leg-
acy to every one of one group to the exclusion of all
who constituted the other group. Unless the sense in
which the words used permit, under all the material and
relevant circumstances, certain application to ascertained
persons, the bequests must fail for uncertainty.

The circumstances are not those where the testator
had but one brother, who had children who survived the
death of the testator; nor those where there existed a
plurality of brothers at the time of the execution of the
will, and two or more of these had children surviving
at the death of the testator. Neither these nor other pos-
sible contingencies under varying circumstances are pres-
ent problems, and, therefore, are excluded from consid-
eration. The immediate inquiry is whether or not the
language of the will may be, under all the circumstances,
construed to apply to the surviving nephews and nieces
of a brother, who was living at the date of the execution
of the instrument by the testator, and at the death of
the testator.

When the testator made his will, he wrote as of the
present, with reference to the future effectiveness of the
document. At the date of the execution of the will, he
had two sets of nephews and nieces. The complete iden-
tification of either set was to name the father, or to

describe him in terms which would indicate whether the father was the living or dead brother. The testator drew the line between the present and the past. In the ordinary and grammatical sense a simple affirmation of a fact, relationship, or circumstance is of the present. So, when he made his gift "to each of the children of my brother," the form adopted carried the implication that the brother was then in existence. Louis C. Darden, his brother, was the only brother in being at that time, and, consequently, the language has definite and plain application to his children. On the other hand, Samuel Darden, a brother, was long since dead at the writing of the document. As by his death a brother ceased to be of the present, his relationship to the testator, as contrasted with that of a brother in being, is spoken of in terms of the past. So, to give to the children of the dead brother, in the form of bequest adopted, it was obviously necessary to designate their parent by name or by some descriptive term. In not so doing the testator made clear his meaning that the several children of his then living brother were the legatees. The point may be illustrated antithetically. In making his choice between the persons who formed the two groups of nephews and nieces accordingly as they were, at the time of the execution of the will, respectively the children of a living and of a dead brother, the testator would have expressed his testamentary purpose accurately either by a gift "to each one of the children of my brother," if he had chosen the children of his living brother; or by a gift to each one of the children of my dead brother, if he had made the alternative choice. Nor is this conclusion affected by the possibility that the living brother might have died and not survived the testator, so that, at the death of the testator, both brothers would be dead. Such a contingency would not have affected the problem of interpretation, because the prospective legatees or objects of gift are designated and determined as of the date of the will, and not as of the death of the testator, which is when the ultimate legatees, whether taking general or resi-

duary legacies, are ascertained. *West v. Sellmayer,* 150 Md. 478, 481, 133 A. 333; *Bourke v. Boone,* 94 Md. 472, 479, 51 A. 396; *Hammond v. Hammond,* 55 Md. 575, 582; *Lavender v. Rosenheim,* 110 Md. 150, 153-158, 72 A. 669.

In support of the conclusion that when a person is described but not mentioned by name, the description, in the absence of a contrary indication, applies to a person in being and answering the description at the date of the will, reference may be made to the analogy found in *Lavender v. Rosenheim,* 110 Md. 150, 72 A. 669, 671. In this case, the residuary gift in remainder was "unto the wife of my said son." At the execution of the will Mary was the wife of the son, but, after the death of the testatrix Mary obtained a divorce and married another. On the termination of the precedent particular estate after the divorce, Mary, because she was the wife at the execution of the will, was held to take the residuary estate in remainder, "notwithstanding any change of circumstances which may render the description inapplicable at a subsequent period."

Again, this court, in *Grace v. Thompson,* 169 Md. 653, at 656, 182 A. 573, 574, said, with reference to a provision of the testator's will in which the residue, at the termination of a life estate, was to be divided equally between "my brothers and sisters": "When the will was executed, he [testator] had no brother, for his only brother had died months before, and he had but one sister, for his other two sisters had died many years before. Ordinarily, when one says that he has a brother or a sister, it is assumed that he means a living brother or sister, but the testator could not have meant that for he had but one living sister and no living brother." And in *Estep v. Mackey,* 52 Md. 592, it is said that a devise to an illegitimate son, H. C. C., who was living at the execution of the will, but who died before the death of his father, the testator, was not effective as a devise to another illegitimate son of the same name, who was born after the death of H. C. C. but before the death

of the father. The reasoning of the court was thus expressed: "It is both conceded and proved that a son, called Henry Clay Cross, was living when the will was made, and who was clearly intended, and died in the life-time of the testator and before this appellee was born. So that notwithstanding he bears the same name, and is the son of the testator, as was the other, the fact that he was born after the will was made, and after the death of the other Henry Clay Cross, his brother, resolves the ambiguity, supposed to exist, adversely to his claim directly under the will. He was not in being and could not have been intended." 52 Md. 592, at page 597.

It has been urged that the will presents a case of equivocation or latent ambiguity, upon the theory that the clause "to each of the children of my brother" is equally accurately descriptive as well of the children of the brother who was dead at the time of the writing of the document as of the children of the brother, who was then alive. It was on this theory that evidence, including evidence of the testator's intention, was introduced. The previous discussion has indicated that the problem is not one of latent ambiguity or equivocation. It has been shown that the children of the brother in being at the time of the execution of the will completely satisfy the description given in the will. They are the children of the *living* brother. This material, differentiating, and so decisive fact is not true of nephews and nieces who are children of a brother who was dead at the execution of the instrument, and, so, they do not equally satisfy the description of the legatees given in the will. The living brother was in the testator's mind. Otherwise, he would have written the children of my *dead* brother or some other equivalent term. See *Douglas v. Fellows*, 1 Kay. 114, 121.

The intrinsic evidence of the will at bar affords a description of the objects of the gifts with a certainty, which is not so affected by the extrinsic evidence introduced of the facts and circumstances as to present an equivocal description of the objects or subjects of his

bounty. So, expressions of intention by the testator are, on this record, not admissible to affect the interpretation. Such declarations are only receivable to assist in interpretating an equivocation which results from the use of a term in the will which, upon application to external objects or subjects, is found to describe two or more external objects or subjects equally. *Wigmore on Evidence,* (2nd Ed.) secs. 2471-2472; *Miller on Construction of Wills,* sec. 43, pp. 123-125; *Thayer's Preliminary Treatise on Evidence,* pp. 482, 483. See 94 *A. L. R.* pp. 1-293 for cases *Dahmer v. Wensler,* 350 Ill. 23, 182 N. E. 799; *Northern Trust Co. v. Perry,* 105 Vt. 524, 168 A. 710; *Re Hurley's Estate,* 61 S. D. 233, 248 N. W. 194; *Calder v. Bryant,* 282 Mass. 231, 184 N. E. 440; and valuable annotations on Extrinsic Evidence.

The conclusion of the court is that the extrinsic facts on this record allow it, and, so, the words of the will must be read in their primary sense, which gives the legacies to the children of the brother in being at the execution of the will, who survived at the death of the testator. *Supra.* See *Nat. Soc. for Prevention of Cruelty to Children v. Scottish Nat. Soc. for Prevention of Cruelty to Children,* (1915) A. C., 207, 212, 213.

The appellant has cited the case of *Doe ex dem. Hayter v. Joinville,* 3 East, 172, 102 Eng. Reprint, 563, which is an authority in illustration of the rule that uncertainty in subject or object avoids the gift. *Richardson v. Watson,* 1833, 4 B. & Ad., 787, 798; *Robinson v. Waddelow,* 1836, 8 Sim., 134; *Winter v. Perratt,* 1843, 9 Cl. & F., 606, 688; *Peacock v. Stockford,* 1853, 3 DeG. M. & G., 73, 78; *Coogan v. Hayden,* 1879, 4 L. R. Ir. 585, 592; *Sinnott v. Walsh,* 1880, 5 L. R. Ir. 27, 42; *Hawes v. Hawes,* 1880, L. R., 14 Ch. D., 614, 618; *In re Featherstone's Trusts,* 1882, L. R., 22 Ch. D., 111. The case, however, does not establish a principle. *In re Stephenson, Donaldson v. Bamber,* [1897] L. R. 1 Ch. D., 76; *Wood and Ritchie's English Overruled Cases,* vol. 3, 5263.

The appellants rely upon the fact that Jarman, in his work on *Wills,* cites *Doe ex dem. Hayter v. Joinville,*

*supra,* as being one of a class of cases where the devise or bequest is to a person who sustains a given character but without specification by name, which would probably come within the principle of equivocation, and so allow the declarations of the testator or other direct evidence of his intention to be received in evidence to clear up the ambiguity by identifying the actual subject or object of the gift among the several persons or properties answering the description. Pages *401, *405, *406; also cited at pages *340, *935, *936, *1055. The will mentioned was held void for uncertainty after full consideration of what would seem to be all the relevant and material facts, although no extrinsic evidence, if any, was offered of the intention of the testator. So, the suggestion of Jarman was not a matter involved, and it is not clear how it could have been. In stating the case, *arguendo,* in *Winter v. Perratt, supra,* Lord Brougham, at pages 688-689, of 9 Cl. & F., said: "In *Doe. v. Joinville* (3 East, 172), the remainder being given by the testator, one moiety to his wife's family, and the other to his *brother* and sister's family (not brother's and sister's family), the testator having one brother with children, one sister with children, and a deceased sister who had left a family; and there being no means afforded by the will of ascertaining which sister was meant, or what relations of his wife or whether it was his brother or his family who were to share with one or more of the sister's family, the court, of necessity, held this void for uncertainty."

Both in this citation and in the text of Jarman, the statements of the terms of the will are inadequate. Before bequeathing and devising his estate unto his wife for life, and then in remainder as stated, the executor had given by separate bequests the same amount of money (1) to his brother Hayter and to his wife and children, equally to be divided between them share and share alike; (2) to his brother-in-law William Whitmarsh and his children, to be equally divided between them, share and share alike; and (3) to his sister Mary

Cooper, and to her husband and children, equally to be divided between them share and share alike. It thus appeared upon the face of the document that the testator had given equal general and immediate legacies to three groups, and that Mary Cooper was a sister presumptively in being at the time of the execution of the will and that another sister, the wife of Whitmarsh, either was then, or had been, in being. It was shown by the extrinsic evidence that, at the time of the execution of the will, Jean, a sister and the wife of William Whitmarsh, was dead, leaving surviving her children and husband. The other legatees were alive when the will was made and at the death of the testator.

Thus there is the intrinsic evidence of the document, when read in the light of the extrinsic circumstances, that the testator had given equal legacies to the family of the dead as well as of the living sister, and these facts contributed to the difficulties of construction. Where the testator is shown by his will to have in mind the family of each sister, whether such sister is then living or not, in the gift of equal general legacies, and gives the general legacies to those who formed the families of his living brother, *nominatim,* and living sister, *nominatim,* and to the family of the dead sister, and not in her name as in the other gifts but in the name of the living husband, *nominatim,* and his children, then, in this particular, the will presents no ambiguity in the residuary devise and bequest, and "sister's family" would appear by the testator's own definitions to signify the living sister's family. There are, of course, other difficulties on the score of uncertainty, but these need not be considered.

It remains to note the case of *Hare v. Cartridge,* 13 Sim. 165 (1842), 60 English Reprint, 63, which is greatly relied on to support the construction that all the nephews and nieces, the children of both brothers, are to take $5,000 every one, if surviving at death of testator. This construction is attained by converting the singular form "brother" in the clause "each one of the children of my brother" into the plural "brothers." In the case re-

ferred to the testator gave the residue upon the trust to pay and apply and to equally divide the same unto and between and amongst his first cousins, the children of his father's brother of the name of Cartridge, and his nephews and nieces, children of his half-brothers of the name of Webb. The testator's father had two brothers of the name of Cartridge, both of whom died in the testator's lifetime, but whether before or after the execution of the will does not appear. Both uncles left children, some of whom survived the testator. The vice chancellor held that testator had in view two classes, which comprised respectively his cousins and his nephews and nieces, and, in the absence of any negative words which would exclude the children of any brother of his father of the name of Cartridge from taking, the cousins surviving of both brothers would take notwithstanding the use of the word brother in the singular number. The court finds it difficult to follow this reasoning, especially as the testator used the plural number "half brothers" in his inclusion of his nephews and nieces of the half blood in the same gift. The court does not regard this decision as controlling the construction of the will at bar. In the first place, as observed by so eminent an authority as Jarman in his work on *Wills*, vol. 1, p. *347 p. 376 (6th Ed.), "The decision seems opposed to all the other authorities on this subject." Again, the gift there was to a class, and here the gift is not to a class, but to the legatees *designatio personarum*. The present gifts lack the essential characteristics of a gift to a class of persons. As every one of the nieces and nephews is given a general legacy of $5,000 if alive at the death of the testator, so the share received is not dependent upon the ultimate number of persons. Again, the legatees are not joint tenants, since they do not enjoy the right of survivorship, but every general legacy, upon the death of the several legatees before the testator, falls into the residue and passes to the wholly distinct and different residuary legatees. *Miller on Construction of Wills*, secs. 68, 69, 86. And, finally, so far as the ques-

tion under consideration is concerned, the case has been disapproved by the later decision of *In 're Stephenson, Donaldson v. Bamber,* L. R., [1897] 1 Ch. Div. 75, 81-85.

The view here taken prevents an intestacy and gives effect to the sense in which the testator wrote; and this was the view of the chancellor. *Grace v. Thompson,* 169 Md. 653, 657, 182 A. 573.

> *Decree affirmed, with costs to be paid out*
> *of the fund.*